## Coleman v. Commonwealth.

Nov. 10, 1939.

L. J. May for appellant.

Hubert Meredith, Attorney General, and J. M. Campbell, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At the trial of an indictment returned by the grand jury of Pike County accusing appellant of the offense of

maiming (as is denounced by Section 1165 of our present statutes) by biting off a portion of an ear of Frank Kenney, he was convicted and punished by confinement in the penitentiary for the minimum period of one year. His motion for a new trial was overruled, and from the judgment pronounced on the verdict he prosecutes this appeal, urging through his counsel these grounds as reversible errors: (1) Error in overruling defendant's demurrer to the indictment; (2) error in admitting incompetent evidence offered by the commonwealth; (3) error in overruling defendant's motion for a peremptory acquittal; (4) the verdict is flagrantly against the evidence and not supported by it, and (5) newly discovered evidence since the trial material to appellant's defense.

Before discussing these grounds seriatim, we deem it necessary to observe that the provisions of our section of the statute, supra, are an enlargement and a broadening of the common law crime of mayhem. The common law offense was "such a bodily hurt as renders a man less able in fighting to defend himself or annoy his adversary; but if the injury be such as disfigures him only, without diminishing his corporal abilities, it does not fall within the crime of mayhem." Wharton's Criminal Law, 12th edition, volume 1, page 1048, section 767. Further along in the same section the learned author continues by saying: "By statutes, however, in England and in some of the United States, the offense has been extended so as to cover all malicious disabling to the person." Our statutory enlargement of the common law offense is Section 1165, supra, of our statutes. It says: "If any person shall, by fighting or otherwise, unlawfully pull or put out an eye, cut or bite off, or slit the tongue, nose, ear or lip, or cut or bite off any other limb or member of another person, he shall be confined in the penitentiary not less than one nor more than five years."

The phrase therein "by fighting or otherwise" was intended to make the unlawful disfiguring act punishable, notwithstanding it was committed during a fight between defendant and his victim, whereas at common law the offense was not committed if the disfiguration occurred during or in consequence of a fight. The statute punishes all disfigurations, including the biting off or slitting an ear, which act of maiming did not come within the purview of the common law definition of mayhem as above outlined by Mr. Wharton, and with whom

all other text writers and courts agree. Having said this much we will now proceed to a determination of the above enumerated grounds in the order in which they appear.

1. There is awkwardness in drawing the indictment, but which no doubt is largely made to appear by error in copying the word "biting" when the word "hitting" was intended. The context of the indictment so clearly indicates as to make it not to offend against the necessary requirements of an indictment as set out in subsection 2 of Section 122 of our Criminal Code of Practice saying: "The indictment must contain * * * A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended; and with such degree of certainty as to enable the court to pronounce judgment, on conviction, according to the right of the case." As drawn, the indictment charged that: "* * * said defendant then and there, by means of fighting, biting an ear of Frank Kenney, and by means of making an assault on Frank Kenney with a beer bottle and by biting (hitting) Frank Kenney on and upon the head, ear, eye, body and limbs with said beer bottle, and by biting said Frank Kenney, did then and there unlawfully, wilfully, maliciously and feloniously bite a portion of the ear off of the said Frank Kenney," &c. The awkwardness mentioned is apparent, but the substance clearly conveys to "a person of common understanding * * * what is intended." However, if our interpretation should be at fault, then the only criticism of the indictment would be that it charged the maiming by defendant to have been committed in two ways: (a) By striking his victim with a beer bottle on the ear, thereby severing a portion of it, or (b) by biting off that portion of his victim's ear, thereby bringing the indictment within the permission given by Section 126 of the same Code requiring an indictment to charge but one offense, but with the qualification that "if it may have been committed in different modes and by different means, the indictment may allege the modes and means in the alternative."

The instant indictment did not employ alternative terms, but on the contrary employed conjunctive terms, and it might be that in view of the plain understanding conveyed by the indictment the court would be authorized to substitute the disjunctive "or" where the indict-

ment employed the conjunctive "and." But however that may be, the court on motion required the commonwealth to elect whether it would prosecute the defendant for the crime as committed by striking his victim with a beer bottle as the manner by which the maiming was perpetrated, or by biting off the maimed member of his body. It elected to prosecute him for maiming his victim by biting, and the prosecution proceeded altogether upon that theory. We, therefore, conclude that if there were any error in the practice it was immaterial and, therefore, does not authorize a reversal of the judgment, since the election by the commonwealth had the effect to eliminate from the indictment the duplicitous or confusing language forming the basis of this ground.

2. The only incompetent evidence complained of under ground (2) is some testimony by the prosecuting witness (undenied by defendant) that some six months prior to the commission of the instant crime he and the defendant had some angry words over an accusation by the latter that the former was the father of a bastard child. The court at the time admonished the jury that the only effect of that testimony, if any, was to show the state of feelings between the two, and in doing so he intimated that he regarded the incident as of trifling significance. We do not regard it as sufficiently material to authorize a reversal of the judgment, even if it should be classified as error, and being so convinced it becomes unnecessary to determine whether or not it was erroneously admitted.

(3) and (4). Grounds (3) and (4) each involve the sufficiency of the evidence to sustain the conviction and they will be disposed of together. They are necessarily based upon the contention that the evidence did not authorize a submission of defendant's guilt to the jury; or that it was insufficient to sustain the conviction—the determination of which makes it necessary to briefly review the commonwealth's testimony.

The victim and another prosecuting witness testified that they were in a restaurant in the village of Lookout in Pike County in the early evening (after dark) of the day of the general election in 1937 when defendant came into the restaurant and passed by the table where the victim was sitting and stumbled over the feet of the latter. Some angry words occurred between them but with no other results, and later the prosecuting witness and

his companion left the restaurant and went to another store some 200 feet distant, to which place he was followed about 25 minutes later by defendant and some of his companions. The prosecuting witness claims that when defendant approached the latter store he (witness) was standing on a small platform in front of it, and when defendant got to within a comparatively short distance of witness he (defendant) threw a beer bottle at the witness, when the latter threw an empty half-pint flask at defendant. The latter (according to testimony for the prosecution) then rushed at witness and knocked him down on the platform and commenced beating him in the face with his fists, during which time he bent down and bit off a portion of one of his ears, the victim stating that while defendant was doing so he (witness) exclaimed: "Quit biting my ear," which exclamation was heard by at least two if not more of the bystanders, who testified in the case; whilst about an equal number testified that they did not hear it, but some of them were not in a position to have heard it, since upon the beginning of the fight they rushed into the store room to which the porch was attached.

Defendant also claims that during the fight the parties had shuffled to the end of the porch, which was only a short distance above the ground, and rolled off it where there was some trash, some rocks, perhaps tin cans, and bottles, whereby the complained of maiming might have been committed. But that unsupported surmise is extremely improbable and which is contrary to all of the direct testimony heard upon the trial. In view of the evidence as so briefly, yet substantially, outlined, it is useless to further pursue the discussion of either of these grounds, since the condition of the testimony clearly presents the clean cut issue as to whether or not the loss of the victim's ear was produced by an intentional biting by defendant, instead of the remote possibility that it may have been accomplished in some other innocent manner. The court, therefore, did not err in overruling defendant's motion for an acquittal, and for the same reason ground (4) is likewise unsustainable.

5. During the trial it developed that the victim, following the fight, was quite bloody, due largely to the fact of the severance of his ear, and he was carried to the office of a local physician named Shields, who treated his ear and perhaps other wounds. Neither the prosecution, nor the defendant, attempted to secure the testi-

mony of that physician, although defendant knew at the threshold of the trial that he was the one who treated his victim's ear. However, after the trial defendant claims not to have consulted with or interviewed Dr. Shields and he filed his affidavit stating in substance that he never knew what physician, if any, treated his victim's ear until the latter testified at the trial; but he nowhere stated that he then began efforts to discover or locate the physician, or to ascertain what his testimony would be, nor did he at any time move for the setting aside of the swearing of the jury and continue the prosecution until he could obtain such information. With his affidavit he filed one made by the physician which in its entirety says: "Mr. Frank Kenney came to my house, very drunk, stating he had been in a fight with Joe Coleman and others. Said someone bit or cut his ear off. Said he would get even. Examination showed a straight cut across upper part of ear. Looked like a cut from a bottle."

Defendant's theory as based upon that affidavit is that the maiming of Kenney was produced by a bottle and not inflicted by an intentional biting perpetrated by defendant as charged in that part of the indictment upon which the commonwealth elected to prosecute him. But it requires a keener power of interpretation than we possess to so conclude from the language of the physician's affidavit, even conceding that due diligence was exercised to procure the benefit of his testimony. The only thing contained in the affidavit, remotely pointing to the interpretation urged by defendant, is that the doctor stated that the severance of the ear "looked like a cut from a bottle." That statement in no manner negatived the idea that it might also have been produced by teeth when employed in the act of biting. So that, the alleged newly discovered testimony is unavailable for two reasons: (a) Due diligence so as to entitle defendant to the benefit of it was not exercised, and (b) if diligence had been exercised the alleged testimony was immaterial.

Before concluding the opinion it might not be amiss to call attention to the state of the law with reference to the right of self defense on the part of the defendant in the trial of this character of prosecution. Defendant's testimony in this case was directed exclusively towards establishing his right of self defense for engaging in the fight or encounter with his victim, and by

which he sought to establish the blame therefor exclusively on his victim. As we have said, he denied altogether committing the maiming with which he was charged. The law applicable to such state of facts is thus stated by Mr. Wharton in his work supra, on page 1054, Section 72: "The fact that the accused was free from blame in bringing on the encounter or difficulty in which the act inflicted, charged as mayhem occurred, cannot be set up as a defense." But later on in the same section the author says: "Self-defense can always be set up as a defense in a trial of an indictment for mayhem, but a plea of self-defense in such a case is good only where it is shown that *the act* was done by the accused in order to save his own life, or to prevent great bodily harm to himself, and that the resistance on his part was in proportion to the injury threatened." (Our emphasis.)

There was no pretense on the part of the defendant in this case that he was compelled to bite off a portion of his victim's ear in order to rid himself of any danger, or threatened harm then and there being inflicted upon him, or which he in the exercise of a reasonable discretion believed would be so inflicted upon him. On the contrary, as we have seen, he denied having done so either in self-defense or for any other purpose. The court, however, did give to the jury an instruction on self-defense, but correctly limited the right of defendant to the benefit of it, except for the purpose of defending himself as outlined by the last inserted text from Mr. Wharton. The right, therefore, was confined to the immediate perpetration of the particular offense. But whether defendant was entitled to that instruction, under the facts outlined by his testimony, and that of other witnesses in the case, is a question that need not be determined, since the giving of the instruction, as indicated, could not and did not prejudice any of his rights.

Wherefore, for the reasons stated, the judgment is affirmed.