THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN RÍOS RIVERA, Defendant and Appellant.

No. CR-62-240.     Decided April 25, 1963.

*César Vélez González* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The appellant was convicted by the court without a jury of a crime of mayhem. In the information he was charged that on June 4, 1961, in Arecibo, Puerto Rico, "he attacked and assaulted with a machete . . . Silverio Maldonado Durán, a human being, inflicting a lacerated wound on his wrist on the back of his left hand, separating the extensor muscles . . . which lacerated wound on the back of the wrist . . . totally and permanently maimed his left hand, which is an important member of the body of the aforementioned Silverio Maldonado Durán."

The evidence of the prosecution consists of the testimony of the victim Silverio Maldonado Durán and that of Dr. Julio Rodríguez Olmo.

Briefly stated, the injured party testified that he has been a carpenter for the last 28 or 29 years; that the defendant is a merchant and that the witness has been his client many times; that on June 4, he went to the store of the accused and bought four pounds of chicken feed and four pounds of ground corn, paying with a five-dollar bill and receiving a change of $4.44; that he then asked for a bottle of malt and the accused answered, "I am going to give it to you right away"; that the accused attacked him with a machete, wounding him on his neck and once more on his left hand. He also testified that he cannot close his left hand and that he cannot use it.

On cross-examination he testified that prior to that day he had never had any incidents, quarrels or discrepancies for money with the accused; that he does not understand why the accused attacked him; that the witness had taken two shots of rum in the store of the accused.

Dr. Rodríguez Olmo testified on the nature of the wounds of Maldonado Durán and the condition of his left hand. Further on we shall refer to his testimony.

The evidence for the defense, consisting of the testimony of Gregorio Soto, tended to establish the facts that on the day the events took place the victim was drinking rum at the store of the accused; that he asked for a pound of meat and the accused weighed and served it to him; but when the victim said he could not pay for it the accused put it back in the freezer; that then, Maldonado Durán stood between the freezer and the counter and struck the accused with his fist on his back; that the defendant attacked him with a small dagger; that the victim interposed his hand and the dagger hit his neck; that the accused attacked only once.

Even if the trier had given credit to the evidence of the defense, the acquittal of the accused would not be justified on the ground that he acted in self-defense.

It is beyond question that the doctrine of self-defense applies to cases of mayhem.[1] The right of self-defense in no case extends to the infliction of greater injury than is necessary for its purpose. To justify the right of self-defense the defendant must show that he had reasonable ground for believing that he was in imminent danger of losing his life or receiving great bodily harm; and that he did not cause more damage than was necessary for his defense. Section 54 of the Penal Code (33 L.P.R.A. § 101); *People* v. *Lozada*, 37 P.R.R. 860 (1928). Moreover, the circumstances relied on for self-defense must be sufficient to excite the fears of a reasonable person. *People* v. *Morales*, 45 P.R.R. 185 (1933).

In accordance with the evidence for the defense the accused, in using a deadly weapon to repel an attack with the fists, there being no other circumstances to give him

---

[1] See the following cases and authorities cited by the Solicitor General: *Green* v. *State*, 44 So. 194; *State* v. *Conahan*, 38 Pac. 996; *People* v. *Alexander*, 205 Pac. 876; *Coleman* v. *Commonwealth*, 133 S.W.2d 555; *Keith* v. *State*, 232 S.W. 321; 16 A.L.R. 949; 1 Wharton, Criminal Law & Procedure 733–734.

reasonable ground to believe that he was in imminent danger of losing his life or receiving great bodily harm, exceeded his right to self-defense, and even if the evidence was not contradictory as to whether or not the prejudiced party attacked the accused with his fists, his acquittal is not justified on the basis of the doctrine of self-defense. *Cf. People* v. *Sutton*, 17 P.R.R. 327 (1911).

A more serious question is whether the facts proved justify the conviction for the offense of mayhem. Section 212 of the Penal Code (33 L.P.R.A. § 671) defines the crime of mayhem as follows:

"Every person who unlawfully and maliciously deprives a human being of a member of his body, or disables, disfigures, or renders it useless, or cuts or disables the tongue, or puts out an eye, or slits the nose, ear or lip, disfigures his face or permanently alters the appearance of his face or permanently renders useless his capacity to hear, see or talk, is guilty of mayhem."

■■■ According to the preceding definition, mayhem consists in depriving a human being of a member of his body, or disabling, disfiguring or rendering said member useless. *People* v. *Beltrán*, 64 P.R.R. 843 (1945). We agree with the Solicitor General that to maim, disfigure, or disable a member of the human body is injuring that member in such a way that it is rendered useless, not only in combat[2] but also for all the practical ordinary purposes of life—*cf. People* v. *López*, 32 P.R.R. 47 (1923)—and that although our statute does not make any provision on that particular, the disabling of the member of the body must be permanent as stated in common law. 1 Wharton, Criminal Law & Procedure 728. It must now be determined whether the injury inflicted on the victim is of a permanent nature and whether as a result of such injury the hand became useless. Other-

---

[2] *People* v. *Beltrán, supra*. Although § 212 was amended subsequently to the *Beltrán* case, the amendment did not affect the modality of the crime of mayhem involved herein.

wise, § 286 of the Code of Criminal Procedure (34 L.P.R.A. § 817) would be applicable. It provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense.

"On an information for the crime of mayhem, the jury may find the defendant guilty of the crime of aggravated assault and battery, or of simple assault and battery, provided that at the trial it has been proved that the person assaulted has not been rendered wholly useless, so far as concerns any important member of his body."

■ The injured party testified, as has been said, that he could not use his left hand, and when the judge tried to close his hand he bent on his side as if it caused him pain. Nevertheless, Dr. Rodríguez Olmo, who treated him, testified that he had a lacerated wound on the dorsal part of the wrist of his left hand that had separated the extensor tendons of the forefinger, middle finger, and the ring finger; that those tendons extend the fingers while the flexor tendons regulate the closing of the hand. He also testified that he examined the left hand of the victim the day of the trial; that the movement of the ring finger, middle finger, and the forefinger is normal, and that he has a marked limitation of extension in the thumb; that the balance of the muscles is always affected and even if only one is separated, if it does not return to normality, then the balance of the others is affected; and in that case the extension and flexion are limited. The doctor continued his testimony as follows:

"Q. And the other three fingers?
A. There is no problem with the other three fingers.
Q. Then, there is no disability in the other fingers?
   The fact that he cannot close the hand completely, could he close the hand completely?
A. Yes.
Q. With the aid of some therapy?
A. With some effort on his part he can do it.
Q. Does he have another wound?

A. A deep wound in the left side of his neck.

Q. What is the nature of that wound?

A. A longitudinal incised wound.

Q. Aside from the definition of the wound, what kind of a wound is it?

A. It was nothing serious. It injured the skin, but none of the blood vessels of the neck.

On questioning by the Judge:

Q. Is the face of this man affected?

A. Not by the wound.

On questioning by the Prosecuting Attorney:

Q. Do you think this man could normally perform his work as a carpenter?

A. At first there will always be a slight difficulty, but as time passes I don't think he will be affected greatly.

Q. Did you see him that night?

A. In the afternoon.

Q. What was his condition?

A. He seemed to have been drinking intoxicating liquor.

Q. How much?

A. Quite enough.

Prosecuting Attorney: That's all.

Mr. Vélez González: No question.

On questioning by the Judge:

Q. Doctor, according to the records you have, according to your observations, could you determine whether there is any disability in his hand?

A. He has 12 to 15% disability.

Q. According to the observation you made, according to the nature of the wound, the process of treatment and healing, do you believe it possible that his fingers hurt? Come here, sir. Can this hurt? Can this hurt? Why do you perform that movement? Does that one hurt?

Injured witness: It hurts.

Doctor Rodríguez Olmo: Do not extend your hand. If the scar were stretching down, there would be retraction of the skin, but there is no retraction.

Judge: You have been trying to surprise the court first in the absence of the doctor.

Dr. Rodríguez: In this case fortunately. . . .

Judge: His gestures show pain.

Dr. Rodríguez. Stretch your hand now.

Judge: Don't you know that your attitude constitutes a lack of respect to the court, an offense?

Prejudiced: It only goes that far. No more.

Judge: Does it hurt?

Dr. Rodríguez Olmo: You should do exercises.

On questioning by the Prosecuting Attorney:

Q. Doctor, in terms of disability, how long was that hand out of use, more or less? Generally?

A. At least two months.

Q. On what date did he receive the wound?

A. In June.

Q. I ask you if that hand, being disabled during that time and once the bandage has been removed, is it natural and logical that after the wound is healed the individual should keep from using the hand and certain defensive mechanism?

A. Yes, sir.

Q. Could that justify the attitude of the witness when his hand is pressed?

A. There is no justification for pain, psychologically, yes, somatically, no." (T.E. pp. 24 to 28.)

Considering the former testimony it is difficult to ascertain whether the victim's left hand is permanently rendered useless. On the date of the trial the extension of the injured fingers was normal, and he could close his hand with a little effort on his part. He would have slight difficulty at first, but in time he would not be greatly impaired. In other words, the doctor's testimony shows that the injured party could, in time, use his hand normally, although at the time of the trial he had a 12 to 15% disability. We have seen that the apparent pain when his hand was closed, was psychological and not somatic.

■ Considering the doubt created by the doctor's testimony as to whether or not the injured party is disabled of

an important member of his body,[3] he should have been found guilty of aggravated assault and battery.

The judgment will be modified according to the terms of this opinion and the defendant will be ordered to pay a fine of $100, and in default thereof to serve the corresponding term in jail.

---

[3] See *People* v. *Pizarro*, 21 P.R.R. 17 (1914).