El Pueblo, Demandante y Apelado, *v.* López, Acusado y Apelante.

Apelación procedente de la Corte de Distrito de Humacao en causa por mutilación.

No. 2064.—Resuelto en junio 14, 1923.

Mutilación—Pérdida de la Visión.—Una persona que causa la pérdida de la visión en un ojo de otra como consecuencia de agresión ilegal y maliciosa, es culpable del delito de mutilación definido en el artículo 212 del Código Penal.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. C. García de la Noceda* y *R. Martínez Nadal.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. HUTCHISON, emitió la opinión del tribunal.

Manuel López Cepero fué declarado convicto de un delito de mutilación.

La acusación imputa un acometimiento y agresión ilegal y maliciosa a consecuencia del cual Eladio Burgos fué privado de su visión por el ojo izquierdo como resultado permanente de un fuerte golpe producido por un instrumento contundente.

La única cuestión que se levanta en el alegato se refiere a la suficiencia de la prueba para sostener el veredicto y sentencia.

La teoría del apelante parece ser que no obstante la declaración del perjudicado con respecto a la pérdida total de la visión en su ojo izquierdo en la fecha del juicio, este hecho debe probarse concluyentemente por prueba pericial, y que la declaración del oculista llamado a declarar por el fiscal no es concluyente ya en cuanto a este punto o respecto a la causa próxima de la pérdida de la visión, o en cuanto a su alegada permanencia.

En el informe oral se sugirió que la mera pérdida de la vista no constituye mutilación dentro del significado del Código Penal. Es razonable agregar que esto se dijo en una forma más o menos indecisa en unión de la manifestación de que el abogado no había tenido tiempo para investigar el asunto.

Si a esta corte incumbiera el tener que hacer una investigación independiente en la forma así indicada, tal investigación podría resultar en una conclusión precipitada sin que exista ninguna impropiedad muy aparente al hacerse una comparación detenida de la versión española contenida en el artículo 212 del Código Penal con el texto original en inglés. Uno habla "de toda persona que   *   *   *   sacare un ojo," el otro de "every person who   *   *   *   puts out an eye."

Aunque no es necesario que resolvamos y no resolvemos ahora que "la mera desfiguración de un ojo no constituiría mutilación," sin embargo la contestación a toda aquella parte del razonamiento del apelante que no se funde en el error de traducción a que acabamos de referirnos puede verse en el caso de *El Pueblo* v. *Núñez,* 190 Pac. 486, en el cual una Corte de Distrito de Apelaciones de California se expresó en estos términos:

"Convenimos con el abogado del acusado en que de acuerdo con el estatuto la mera desfiguración de un ojo no constituirá mutilación a no ser que tal desfiguración resultare en que el ojo quedara inservible; pero creemos que el jurado estuvo justificado al declarar, como su veredicto implica, que ciertamente declaró, que el acusado con el golpe que profirió en la cara del perjudicado 'vació' el ojo a este último."

Entonces, después de citar de la declaración de un oculista, la corte pasa a decir lo siguiente:

"No puede haber ninguna clase de duda de que la anterior declaración, considerada aisladamente demuestra inequívocamente que al perjudicado se le vació un ojo. Si todo lo que el perjudicado podía hacer con el ojo era, como declaró el doctor, meramente distinguir la claridad de la oscuridad, o percibir una señal o movimiento de cierta clase, hecha inmediatamente ante el ojo, éste ciertamente quedó enteramente inservible para él. Si ambos ojos hubieran sido afectados de tal modo, es muy claro que el perjudicado hubiera quedado prácticamente, ciego. Lo que el estatuto claramente quiere decir con la expresión o frase, 'vaciar el ojo' es que el ojo ha sido lesionado de tal modo que el perjudicado no puede usarlo para los fines ordinarios, corrientes y prácticos de la vida."

En el presente caso el oculista que examinó el ojo lesionado unas dos semanas después del acometimiento y ocho meses antes del juicio, manifestó en sustancia que encontró un principio de atrofia del nervio óptico bastante marcado; que el paciente podía ver solamente bultos a veinte pies; que el testigo le manifestó a él que probablemente perdería la visión por aquel ojo; que perdería la visión en su totali-

dad por aquel ojo; que Burgos padecía de una atrofia pro-
gresiva, porque todas las atrofias son progresivas; que desde
la fecha transcurrida hasta la del juicio era posible que
Burgos hubiera perdido la vista por ese ojo; que el día del
examen él podía distinguir bultos a veinte pies; que el tes-
tigo manifestó al paciente que después de algún tiempo él
perdería la vista por ese ojo, si bien el testigo vaciló algo
antes de decirle esto, porque siempre es desagradable de-
cir a un paciente "Ud. no tiene remedio;" que es más fácil
decirle, "Probablemente Ud. va a perder la visión," y de-
jarle que se vaya convenciendo; que desde la fecha del exa-
men a la del juicio había pasado tiempo suficiente, creía el
testigo, para que haya ocurrido la pérdida total de la vi-
sión; que el testigo no podía contestar exactamente que si
el paciente hubiera estado atendido por un especialista in-
mediatamente, hubiese podido conservar alguna visión por-
que con el tratamiento quizás cierta visión hubiera podido
retener; que el testigo no podía afirmar categóricamente si
Burgos pudo ver o nó por ese ojo en la fecha del juicio; que
Burgos ha podido tener alguna otra afección en ese ojo y el
testigo desconocerla, por no haber tenido oportunidad de
examinarle el nervio óptico antes del golpe, pero que el golpe
era suficiente para haberle producido la atrofia.

Si bien el perjudicado no manifestó precisamente que no
había tenido molestias en su ojo izquierdo antes de la fecha
del acometimiento, su declaración en conjunto deja poco o
ningún motivo de duda sobre este punto. La posibilidad
de una afección anterior desconocida por el oculista y la
posibilidad de algún remedio que hubiera podido obtener
de haber hecho antes una visita al oculista, ambas son de-
masiado remotas para merecer seria consideración.

La manifestación hecha por el perjudicado respecto a
la total pérdida de la visión por el ojo izquierdo era entera-
mente compatible con la declaración del oculista, si es que

no fué expresamente corroborada y la hizo en la forma más plausible. Si el jurado estaba convencido de que Burgos dijo la verdad entonces estuvo justificado en emitir un veredicto de culpabilidad contra el acusado por el delito de mutilación.

En cuanto al hecho de si el acusado dió o nó el golpe que hizo perder la visión al perjudicado, cuestión que ha sido alegada con gran insistencia en el informe oral, estamos satisfechos con decir que de un examen cuidadoso de toda la prueba ésta no revela suficiente motivo para una revocación.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf, Aldrey, y Franco Soto.