EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN RÍOS RIVERA, acusado y apelante.

*Número:* CR-62-240    *Resuelto:* 25 de abril de 1963

*César Vélez González,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El apelante fue convicto por tribunal de derecho de un delito de mutilación. En la acusación se le imputó que allá para el 4 de junio de 1961 y en Arecibo, Puerto Rico, . . . "acometió y agredió con un machete . . . al ser humano Silverio Maldonado Durán, infiriéndole una herida lacerada en el dorso de la muñeca izquierda con sección de los tendones extensores . . ., cuya herida lacerada en el dorso de la muñeca . . ., ha sido total y permanentemente mutilado de su mano izquierda, que es un miembro importante de su cuerpo al referido ser humano Silverio Maldonado Durán".

La prueba de cargo consistió en el testimonio del perjudicado Silverio Maldonado Durán y en el del doctor Julio Rodríguez Olmo.

Declaró en síntesis, el perjudicado, que desde hace 28 ó 29 años es carpintero; que el acusado se ha dedicado al comercio y el testigo ha sido su cliente en muchas ocasiones; que el día 4 de junio fue al comercio del acusado y le compró cuatro libras de purina y cuatro libras de maíz picado pagando con un billete de cinco dólares y recibiendo el vuelto de $4.44; que entonces le pidió al acusado una malta y éste le contestó "Ya te la voy a dar"; que el acusado le tiró en-

tonces un machetazo hiriéndole en el cuello y otro machetazo hiriéndole en la mano izquierda. Declaró además que no puede cerrar su mano izquierda y que no puede hacer nada con ella.

En la repregunta declaró que antes de ese día nunca había tenido incidentes, peleas o discrepancias por números con el acusado; que no se explica por qué el acusado lo cortó; que el testigo había tomado licor en el establecimiento del acusado (dos palos de ron).

El Dr. Rodríguez Olmo declaró sobre la naturaleza de las heridas recibidas por Maldonado Durán y condición de su mano izquierda. Más adelante nos referiremos a su testimonio.

La prueba de defensa, consistente en el testimonio de Gregorio Soto, tendió a establecer que el día de los hechos el perjudicado estaba tomando ron en la tienda del acusado; que le pidió una libra de carne y el acusado se la despachó y la pesó pero que al decirle que no se podía pagar, el acusado la echó en el *"freezer"*, que entonces Maldonado Durán se paró entre el *"freezer"* y el mostrador y le pegó un puño al acusado por la espalda; que el acusado le tiró a Maldonado un planazo con una daguita y éste metió la mano; rechazó la daguita y lo cogió por el cuello; que el acusado le tiró un solo golpe al perjudicado.

Aun cuando el juzgador hubiera dado crédito a la prueba de defensa, no se justificaría la absolución del acusado a base de que actuó en defensa propia.

▆▆▆ Es incuestionable que la doctrina de defensa propia se aplica a los casos de mutilación.(¹) Este derecho a la defensa propia en ningún caso se extiende a la inflicción de más daño que el necesario al objeto. Para alegar con éxito la defensa propia, el acusado deberá demostrar que tenía mo-

---

(¹) Véanse los siguientes casos y autoridades citadas por el Procurador General: *Green* v. *State,* 44 So. 194; *State* v. *Conahan,* 38 Pac. 996; *People* v. *Alexander,* 205 Pac. 876; *Coleman* v. *Commonwealth,* 133 S.W.2d 555; *Keith* v. *State,* 232 S.W. 321; 16 A.L.R. 949; 1 Wharton, *Criminal Law & Procedure,* 733-734.

tivos fundados para creer que estaba en inminente peligro de perder la vida o de recibir grave daño corporal y que no infligió más daño que el necesario para defenderse. Art. 54 del Código Penal (33 L.P.R.A. sec. 101); *Pueblo* v. *Lozada*, 37 D.P.R. 927 (1928). Además las circunstancias que concurran para la defensa propia deben ser suficientes para excitar el temor de una persona razonable. *Pueblo* v. *Morales*, 45 D.P.R. 191 (1933).

De acuerdo con la propia prueba de defensa el acusado al utilizar un arma mortífera para repeler un ataque con los puños, sin que existieran otras circunstancias que le dieran motivos fundados para creer que se hallaba en peligro de muerte o de sufrir grave daño corporal, se excedió en el ejercicio del derecho a la legítima defensa, y aun cuando la prueba no fuera contradictoria en cuanto a si medió o no un ataque con los puños del perjudicado al acusado, no procedería su absolución a base de la doctrina de defensa propia. Cf. *Pueblo* v. *Sutton*, 17 D.P.R. 345 (1911).

Una cuestión más seria es la de si los hechos probados justifican la convicción por el delito de mutilación. El Art. 212 del Código Penal (33 L.P.R.A. sec. 671) define el delito de mutilación de la siguiente manera:

"Toda persona que ilegal y maliciosamente privare a algún ser humano de un miembro de su cuerpo, o lo mutilare, desfigurare o inutilizare, o le cortare o mutilare la lengua, sacare un ojo, sajare la nariz, oreja o labio, desfigurare su rostro o alterare permanentemente la apariencia de su rostro o inutilizare permanentemente su capacidad para oir, ver o hablar, será reo del delito de mutilación."

De acuerdo con la anterior definición, existe la mutilación cuando se priva a un ser humano de un miembro de su cuerpo o se mutila, desfigura o inutiliza dicho miembro. *Pueblo* v. *Beltrán*, 64 D.P.R. 885 (1945). Convenimos con el Procurador General en que mutilar, desfigurar o inutilizar un miembro del cuerpo humano es lesionar dicho miembro

de modo tal que no pueda usarse, no ya sólo en el combate [2] sino para todos los fines ordinarios, corrientes y prácticos de la vida—cf. *Pueblo* v. *López*, 32 D.P.R. 50 (1923)—y en que aunque nuestro estatuto guarda silencio sobre el particular, la inutilización del miembro del cuerpo ha de ser de carácter permanente según se entendía en el derecho común. Wharton, *supra*, pág. 728. Corresponde, por lo tanto determinar si la lesión que recibió el agredido es de carácter permanente, y si como consecuencia de esa lesión su mano quedó inutilizada. De no ser ello así, sería de aplicación el Art. 286 del Código de Enjuiciamiento Criminal (34 L.P.R.A. sec. 817) que dispone:

"El jurado podrá declarar al acusado culpable de la comisión de cualquier delito necesariamente comprendido en el delito imputádole, o de tentativa de cometerlo.

"Bajo una acusación por el delito de mutilación, el jurado podrá declarar culpable al acusado de un delito de acometimiento y agresión con circunstancias agravantes, o de acometimiento y agresión simple, siempre que se hubiere probado en el juicio que el agredido no ha quedado inutilizado en algún miembro importante de su cuerpo."

El agredido declaró según hemos dicho ya, que no podía hacer nada con la mano izquierda y cuando el juez trató de cerrarle la mano se inclinaba hacia un lado como si evidenciara sentir dolor. Sin embargo, el doctor Rodríguez Olmo, quien curó al herido declaró que éste presentaba una herida lacerada en el dorso de la muñeca izquierda que le había seccionado los tendones extensores del dedo índice; medio y anular, que esos tendones son los que extienden los dedos mientras que los tendones flexores son los que regulan el cierre del puño. Declaró además que examinó la mano izquierda del agredido el día del juicio; que su movimiento de los dedos anular, medio e índice es normal y que tiene una

---

[2] *Pueblo* v. *Beltrán,* supra. Aunque el Art. 212 fue enmendado con posterioridad al caso de *Beltrán,* la enmienda no afectó la modalidad del delito de mutilación aquí envuelta.

limitación de extensión bastante marcada del dedo pulgar; que el balance de los músculos siempre se compromete y aunque sea uno solo el que se secciona, si ése no va a una situación normal, entonces el balance de los otros queda comprometido y en ese caso se limita la extensión y la flexión. Siguió declarando el doctor como sigue:

"P. ¿En cuanto a los otros tres dedos?

R. En cuanto a los otros no hay problema alguno.

P. ¿Entonces no hay incapacidad alguna en cuanto a los demás dedos? El hecho que él no pueda cerrar la mano totalmente.—¿él la podría cerrar totalmente?

R. Sí.

P. ¿Con un poco de terapia?

R. Con un poco de voluntad de él lo puede hacer.

P. ¿El tiene otra herida?

R. Una herida profunda en el lado izquierdo del cuello.

P. ¿De qué naturaleza era esa herida?

R. Una herida incisa longitudinal.

P. ¿Aparte de la definición de la misma, qué clase de herida?

R. No revestía nada serio. Lesionó la piel, pero no interesó ninguno de los vasos del cuello.

A preguntas del Hon. Juez:—

P. ¿El rostro de este individuo está afectado?

R. No por esa herida.

A preguntas del Hon. Fiscal:—

P. ¿Usted cree que este ciudadano podría funcionar normalmente en el ejercicio de su carpintería?

R. Al principio, cuando uno empieza, siempre habrá alguna dificultad ligera, pero con el tiempo no creo que sea una cosa que lo comprometa grandemente.

P. ¿Usted lo vió esa noche a él?

R. Por la tarde.

P. ¿Cuál era el estado de él?

R. El daba señal de haber bebido bebidas embriagantes.

P. ¿Poco o mucho?

R. Bastante.

Hon. Fiscal:—Nada más.

Lcdo. Vélez González:—Ninguna pregunta.

A preguntas del Hon. Juez:—

P. ¿Doctor, de acuerdo con el historial que tiene de él, de acuerdo con la observación que le hiciera, podría determinar si él ha quedado con alguna incapacidad en su mano?

R. El tiene una pérdida de un doce o un quince por ciento de su mano.

P. ¿Por la observación que hizo ahora, por la naturaleza de la herida, por el proceso de tratamiento y curación, usted cree que a este señor le pueden doler esos dedos? Venga acá, señor. ¿Este le puede doler? ¿Este le puede doler? ¿Por qué hace ese movimiento usted? ¿A usted le duele ese?

Testigo perjudicado:—Me duele.

Dr. Rodríguez Olmo:—No haga extensión con la mano. Si la cicatriz estuviera pegada hacia abajo habría retracción de la piel, pero es que no hay retracción.

Hon. Juez:—Usted ha estado tratando de sorprender al tribunal primeramente en ausencia del doctor.

Doctor Rodríguez:—En este caso, afortunadamente . . .

Hon. Juez:—Estas gesticulaciones que hace él como de dolor.

Dr. Rodríguez:—Estire ahora.

Hon. Juez:—Usted no sabe que una actitud como la suya constituye una falta de respeto para el tribunal, es un delito.

Perjudicado:—Va hasta ahí. Hasta ahí nada más.

Hon. Juez:—Eso le duele?

Dr. Rodríguez Olmo.—Usted mismo debe hacer ejercicio.

A preguntas del Hon. Fiscal:—

P. ¿Doctor, esa mano estuvo, hablando en términos de incapacidad, sin uso, cuánto tiempo más o menos? ¿Generalmente?

R. Por lo menos dos meses.

P. ¿Esa herida de qué fecha es?

R. De junio.

P. ¿Le pregunto si estando inhabilitada esa mano en su uso por ese tiempo, si es natural y lógico que una vez eliminado el vendaje, cicatrizada esa herida, el individuo

guarde alguna inhibición por el uso de la mano y cierto mecanismo defensivo?

R. Sí, señor.

P. ¿Eso podría justificar, podría en alguna forma explicar la tendencia del testigo a cuando se le aprieta?

R. No hay justificación para el dolor, sicológica sí, somática no." (T.E. págs. 24 a 28.)

A base del anterior testimonio es difícil asegurar que el agredido ha quedado inutilizado permanentemente de su mano izquierda. Para la fecha del juicio la extensión de los dedos lesionados era normal y con un poco de voluntad de su parte podría cerrar completamente la mano. Cuando empezara a trabajar tendría alguna dificultad ligera pero con el tiempo no lo comprometería grandemente. En otras palabras, las manifestaciones del doctor dan a entender que el agredido, con el tiempo podría darle el uso corriente a su mano aunque para la fecha del juicio sufría una incapacidad de un doce a un quince por ciento. Ya hemos visto también que la tendencia del testigo de aparente dolor cuando se le cerraba la mano era sicológica pero no somática.

■ Ante la duda que crea el testimonio del doctor sobre si el agredido ha quedado o no inutilizado de un miembro importante de su cuerpo[3] debió declararse culpable de un delito de acometimiento y agresión con circunstancias agravantes.

*Se modificará la sentencia de acuerdo con los términos de esta opinión y se condenará al acusado a pagar una multa de $100.00 y en defecto de pago a sufrir cárcel por el término correspondiente.*

---

[3] Véase *Pueblo* v. *Pizarro*, 21 D.P.R. 17 (1914).