*In re* RAFAEL ADOLFO DE CASTRO, JUEZ DE DISTRITO GENERAL DE PUERTO RICO, querellado.

*Número:* O-69-69          *Resuelto:* 1ro. de noviembre de 1971

J. F. *Rodríguez Rivera,* Procurador General Interino, *Gilberto Gierbolini,* Procurador General, *Norberto Colón,* Fiscal Auxiliar, *y* Elpidio Arcaya, *Procurador General Auxiliar, abogados del Estado Libre Asociado de Puerto Rico;* Lorenzo Lagarde Garcés, Víctor M. Pons, Jr., *y* Sergio Peña Closs, *abogados del querellado.*

PER CURIAM: Luego de que un Magistrado de este Tribunal halló causa probable, el Procurador General formuló dos cargos contra el Juez de Distrito Hon. Rafael Adolfo De Castro, a tenor con lo dispuesto en el Art. 24 de la Ley de la Judicatura, 4 L.P.R.A. sec. 232, Suplemento. El primer cargo se basa en una agresión realizada por el querellado

contra el Juez de Distrito Hon. Guillermo Méndez. El segundo cargo se basa en una riña en la cual el querellado participó, la cual tuvo lugar momentos después del incidente que dio lugar al primer cargo. Los hechos ocurrieron el 11 de enero de 1969 en una fiesta que se celebraba en el Barrio Guayanés de Yabucoa. El querellado contestó los cargos alegando defensa propia en ambos casos.

En 10 de junio de 1969 este Tribunal designó al Juez Superior Hon. Francisco Espinosa para que actuara de Comisionado Especial y recibiera la prueba y la depositase en la Secretaría de este Tribunal con sus conclusiones de hecho. La transcripción de evidencia de la vista celebrada ante el Comisionado Especial consta de 234 páginas y la transcripción de evidencia del proceso que contra el querellado se celebró en el Tribunal de Distrito, Sala de Yabucoa, por el acometimiento y agresión cometido contra el Juez Méndez, consta de 532 páginas. En este caso en particular se hizo transcripción de la evidencia desfilada en el Tribunal de Distrito. Por estipulación de las partes, dicha transcripción fue sometida y admitida en evidencia por el Comisionado Especial. El Juez de Distrito que presidió el mencionado proceso absolvió al Juez de Distrito aquí querellado.

En el primer cargo se le imputó al querellado conducta inmoral, impropia y reprensible consistente en los siguientes hechos:

"En dicho sitio y fecha ya indicados, entre cinco y seis de la tarde, mientras el Juez Administrador del Tribunal de Distrito, Sala de Humacao, Hon. Guillermo Méndez Muñoz y el querellado departían respecto a la forma y manera en que habría de conducirse, el lunes 13 de enero de 1969, la labor judicial del referido tribunal, el querellado R. Adolfo de Castro acometió y agredió, voluntaria y maliciosamente, al Juez Hon. Guillermo Méndez Muñoz, quien como resultado de dicha agresión sufrió la fractura de los huesos nasales y serias lesiones en las regiones maxilares y periorbitales que requirieron la hospitalización del agredido."

El segundo cargo lee como sigue:

"Instantes después del incidente reseñado en el primer cargo, el querellado R. Adolfo de Castro provocó con palabras obscenas e intentó agredir al ciudadano Manuel Mediavilla Vázquez, originando una pelea cuerpo a cuerpo con el Sr. Mediavilla en las inmediaciones del solar de la residencia del Sr. César Pérez. En la pelea intervinieron varios ciudadanos que allí se encontraban y el querellado extrajo de su bolsillo una pistola pequeña, marca Colt, calibre 25, debidamente cargada, lista para ser disparada, con la que hizo correr a numerosas personas, con grave riesgo de la vida y la seguridad de las muchas personas que allí se encontraban."

El Comisionado Especial presentó en 29 abril 1971 un breve Informe y Determinaciones de Hechos. El tono del Informe del Comisionado puede apreciarse de las siguientes palabras de dicho Informe:

"No tenemos razones de índole alguna para descartar y no dar crédito al testimonio de uno de los magistrados y aceptar y dar crédito a la del otro. Ambos ocupan cargos de jueces y ambos nos merecen el debido respeto y la más alta consideración. Por otro lado, venimos obligados a someter al Hon. Tribunal Supremo nuestra conclusión sobre lo ocurrido entre ambos magistrados en esa ocasión."

La conclusión del Comisionado es que en los casos cubiertos por ambos cargos el querellado actuó en defensa propia. La posición del Comisionado parece ser la de que como ambos protagonistas—el Juez De Castro y el Juez Méndez— son jueces, ambos le merecen crédito y concluye que la teoría de la defensa—la de defensa propia—es la correcta. No estamos conformes. Debemos, pues, ver con más detenimiento la situación.

El querellado fue admitido a ejercer la profesión de abogado en Puerto Rico en 30 de septiembre de 1963. En 20 de diciembre del mismo año, a los 32 años de edad y a los dos meses y 20 días de experiencia profesional, fue nombrado Juez del Tribunal de Distrito, cargo que ocupó desde entonces, hasta después de la fecha de los hechos, en el Tribunal de

Distrito, Sala de Humacao. Durante los cuatro años que precedieron al 28 de junio de 1968, el querellado también actuó en capacidad de Juez Administrador de dicha Sala. En esa fecha solicitó al Juez Presidente de este Tribunal que lo relevara de dicha responsabilidad. En 5 de julio de 1968, el Director Administrativo de los Tribunales, mediante memorando recomendó favorablemente dicha solicitud y propuso que se nombrara al Juez Méndez para actuar como Juez Administrador, en sustitución del querellado. Ambas recomendaciones fueron adoptadas. Durante el tiempo que el querellado fue Juez Administrador de su Sala, todos los casos de infracciones a la Ley de Vehículos y Tránsito se veían ante él. El querellado había sido enviado por la Administración de los Tribunales a los Estados Unidos para tomar un curso o seminario sobre infracciones de tránsito y tenía especial interés en presidir los casos de tránsito. Desde que el Juez Méndez ocupó el cargo de Juez Administrador alteró esta práctica, tomando él los casos en que los infractores hacían declaración de culpabilidad y asignando al querellado los casos en que había declaración de inocencia, y, por consiguiente, juicio plenario.

Este cambio en la práctica de asignación de casos que efectuó el Juez Méndez, según veremos más adelante, aparentemente fue el motivo que inició el incidente ocurrido entre él y el querellado. Hubo, además, otros tres incidentes entre los dos jueces, que discutiremos a continuación.

En 13 de junio de 1968, cuando el querellado todavía ejercía funciones del Juez Administrador, se encontraba alrededor del mediodía en el negocio de Porfirio Delgado, ubicado cerca del Tribunal de Distrito de Humacao, tomando una cerveza con el Sub-Alguacil de dicho Tribunal, Juan B. Martínez Cruz. Llegó allí el Juez Méndez con el propósito de comprar pan y el querellado lo invitó a tomar una bebida, la cual aceptó. *Según la versión del querellado*, y del Sub-Alguacil Martínez, el querellado informó al Juez Méndez que

durante esa mañana ciertas personas se habían quejado en relación con un solar que alegadamente había sido regalado a este último; pero que él (el querellado) lo había arreglado todo. El Juez Méndez se levantó molesto y manoteando cerca de la cara del querellado y le dijo a éste que eso era embuste, que él era un embustero. El querellado contestó diciendo que no quería pelear con él (Méndez) y éste se retiró del lugar.

*La versión del Juez Méndez* en relación con este incidente difiere en cuanto niega que hubiera manoteado al querellado o le hubiera llamado embustero, pero afirma que le dijo al querellado que él (el querellado) no era "más moral que yo, ni más Juez, ni más abogado, que yo soy una persona honrada que llevo 28 años trabajando con el gobierno." Tanto el Juez Méndez, como el querellado afirman que después de este incidente las relaciones entre ambos se mantuvieron cordiales. Sobre este incidente véase págs. 314–328, 385–400 de la Transcripción de Evidencia del caso *Pueblo* v. *de Castro*, Cr. 69-181 ante el Tribunal de Distrito.

El segundo incidente entre el Juez Méndez y el querellado tuvo lugar en 6 de septiembre de 1968. Ya han transcurrido alrededor de tres meses desde el primer incidente y cerca de dos meses desde que el Juez Méndez sustituye al querellado en sus funciones de Juez Administrador. De Castro le escribe un memorando al Juez Méndez, cuyo contenido es como sigue:

"Redacto este memo con un lápiz prestado. Había lápices para un año en agosto, ahora no hay lápiz alguno. Por favor consígame lápices."

El tercer incidente tiene lugar el 27 de septiembre de 1968, escasamente tres semanas después de surgido el segundo incidente. Es de notarse la forma en que el querellado escribe, esta vez, para dejar sin efecto una orden dictada por el Juez Méndez. La orden del Juez Méndez se relaciona con un caso de abandono de menores que había comenzado a ventilarse ante el querellado. En dicho caso el querellado había dictado una orden declarando con lugar una moción

interesando una exposición más definida de los hechos imputados al acusado. El fiscal, con fecha de 27 de septiembre de 1968, presentó una moción oponiéndose a la orden dictada por el querellado. En igual fecha el Juez Méndez dictó orden declarando con lugar la moción y ese mismo día *el querellado*, a su vez, dejó sin efecto la misma mediante una orden que lee como sigue:

"La orden dictada por el Sr. Juez Administrador de esta Sala el 27 de sept. de 1968 constituye una intromisión administrativa a la función judicial. El Sr. Juez Administrador actuó sin jurisdicción. Así se determina por el tribunal y se anula su orden. La moción de referencia tendrá su vista el día señalado por el Sr. Juez Administrador."

El primer incidente relatado fue traído por el querellado para demostrar la aprensión que justificaría su teoría de defensa propia. Los otros dos incidentes fueron introducidos por el fiscal para demostrar la naturaleza de las relaciones que existían entre los dos jueces antes del suceso que se ventila en el presente proceso. La prueba en cuanto a estos incidentes surge principalmente del expediente del caso *Pueblo* v. *de Castro*, 69-181, por Acometimiento y Agresión Grave, ante el Tribunal de Distrito, Sala de Yabucoa. Véanse T.E. págs. 4–5 de la vista de 27 de agosto de 1970, del presente recurso. Con estos antecedentes en mente examinemos los hechos que son objeto de los cargos formulados ante este Tribunal.

Los hechos imputados ocurren el día 11 de enero de 1969, cuando escasamente habían transcurrido tres meses y medio del tercer incidente relatado, en una fiesta que celebró el Sr. Adalberto Mullenhoff en un edificio del Sr. César Pérez, en la playa del Bo. Guayanés de Yabucoa. El querellado acudió a la fiesta alrededor de las 3:00 P.M. El Juez Méndez también asistió a la fiesta acompañado de su familia, cerca de las 5:30 P.M. El lugar estaba colmado de personas conocidas de la comunidad.

Tan pronto llegó el Juez Méndez al lugar y luego de saludar a varias amistades se inició una conversación entre él y el querellado. Conforme a la declaración del Juez Méndez la conversación se originó a instancia del querellado, quien lo tocó en el hombro y le dijo que quería hablarle. El Juez Méndez siguió al querellado hasta un balcón donde conversaron. El querellado negó que hubiera llamado al Juez Méndez. Declaró que el Juez Méndez se encontraba solo en el balcón cuando se dirigió hacia él para hablarle.

La conversación se inició indicándole el querellado al Juez Méndez que el lunes siguiente, día 13 de enero de 1969, él había sido invitado para la toma de posesión del alcalde de Yabucoa. En igual fecha el Juez Méndez había sido invitado para juramentar la toma de posesión del alcalde de Humacao. A propuestas del Juez Méndez ambos llegaron a un acuerdo sobre cómo atender los trabajos del Tribunal dicho día 13 de enero.

Luego, conforme al testimonio del Juez Méndez, el querellado le preguntó que porqué él (Méndez) estaba viendo casos de tránsito, que él (Méndez) no sabía de tránsito, pero el querellado sí, porque había tomado un curso sobre la materia. El Juez Méndez contestó que él sólo atendía alegaciones de culpabilidad y para ello no era necesario ser un experto; que además él (Méndez) llevaba 35 años en el gobierno, 28 de los cuales habían sido reconocidos por la Asociación de Retiro; que esta experiencia muchas veces cuenta más que el estudio. Ripostó el querellado que no sabía cómo lo habían nombrado Juez Administrador (a Méndez), que él era un mediocre y que lo que ocurría era que el Juez Presidente, el Administrador de los Tribunales y él querían destruirlo (al querellado). El Juez Méndez trató de terminar la discusión alejándose del querellado, pero este lo aguantó por un brazo a la vez que le dijo al oído "me voy a . . . en tu madre y te voy a partir la cara." Acto seguido el querellado agredió al Juez Méndez. Unos invitados separaron al

querellado del Juez Méndez y otros le prestaron primera ayuda para detener una hemorragia nasal. Uno de los golpes le fracturó los huesos nasales al Juez Méndez. Éste necesitó atención médica.

El querellado en su testimonio admite que hubo la discusión sobre los casos de tránsito; que se sacó a colación la cuestión de los estudios especializados del querellado y los años de experiencia del Juez Méndez. Niega que entonces dijera que el Juez Méndez era mediocre. Afirma, en cambio, que dijo que el Juez Méndez era tan bruto como el día en que nació. Admite que había ingerido bebidas alcohólicas en la fiesta y que le disgustó que no se hubiese continuado su tribunal de tránsito. Dice el querellado que cuando él llamó bruto al Juez Méndez, ocurrió lo siguiente:

"Bueno, cuando yo le dije estas últimas palabras, él me da un fuerte golpe en el pecho a la vez que avanza, a mí me dio la impresión como que iba a pasar por encima de mí.

. . . él me da con sus manos, yo no puedo precisar si fue de esta manera o fue de esta otra, mas creo que fue el mismo gesto que meses anteriores había hecho, solo que esta vez me dio fuertemente en el pecho a la vez que me dice que me va a entrar a tiros y yo, estamos, digo, me voy un poco pa [*sic*] atrás y él encima de mí.

Y yo ahí me defendí con la única manera que tenía, digo, él teniendo encima de mí, con las manos en el pecho y me va a entrar a tiros, pues yo le pegué en la cara, diciéndole que primero, a la vez que le estoy dando, que primero le parto la cara y después es que él me entra a tiros . . . ." T.E. del caso ante el Tribunal de Distrito, págs. 342–343.

Los únicos testimonios en cuanto a cómo se originó la discusión y quién inició la agresión física son el del propio querellado y el del Juez Méndez; y los mismos, hemos visto, son conflictivos en cuanto a algunos extremos esenciales. El Juez Méndez niega haber amenazado o haber agredido al querellado. T.E., *supra*, págs. 112–113.

Durante los momentos en que los dos jueces conversaban o discutían, un testigo, el Lic. Osvaldo Gil, se acercó a ellos y departió con ellos por breves momentos, pero declaró no observó nada anormal que le indujera a pensar que estaban discutiendo. T.E., *supra*, págs. 227–229.

Otro testigo, José Manuel González Rivera, fue introducido por la defensa para corroborar el testimonio del querellado en cuanto a que el Juez Méndez fue quien inició la agresión física. Un examen del contenido del testimonio de este testigo, nos induce a concluir que dicho testimonio no es muy digno de crédito. Véase T.E., *supra*, págs. 282–308. Conforme a su testimonio: El es conserje de la escuela Ponce de León. También trabaja jornada parcial en el Restaurant El Veterano, donde ha servido al Juez Méndez y al querellado. Trabaja, además, sirviendo en fiestas. Vio al querellado en la fiesta desde cerca de las 3:00 P.M. Cuando el querellado conversaba con el Juez Méndez, se les aproximó para brindarles entremeses. Ninguno de ellos cogió entremeses. Más tarde regresó para ofrecerle comida a los dos jueces. El querellado dijo al testigo que le sirviera comida a sus hijos. El testigo hizo fila para ello y llevó la comida a los hijos del querellado a una mesa que sabía que éstos estaban ocupando. Luego fue a la cantina para continuar preparando vasos con hielo. Cuando terminó regresó adonde el querellado para informarle que sus hijos estaban comiendo. Esperó un segundo y el querellado le dijo "O.K., está bien." Luego el testigo se paró para ver si habían botellas o algo en la baranda del balcón y le llamó la atención que "el Juez Méndez hizo un ademán y le puso las manos en el pecho al Juez Castro. . . . Se las puso, las tendió sobre el pecho del Juez de Castro. Lo que hizo no sé, sé que las tendió sobre el pecho." T.E., *supra*, pág. 289. Este movimiento se describe como "dando con el dorso de la mano en el pecho." T.E., *supra*, pág. 290. Continúa el testigo declarando que "cuando el Juez Méndez le extendió las manos sobre el pecho al Juez de

Castro, no sé cómo las tendió, *yo sé que el Juez de Castro, no sé, ahí hubo algo y cuando hubo ese algo yo me fui* con mi azafatito a llevar las botellas que había recogido a la cantina para seguir limpiando la sala." Al preguntársele qué fue "ese algo" que observó declaró que fue que "*este señor Juez Castro alzó la mano, no sé con qué idea, porque cuando alzó la mano me fui....*" T.E. págs. 290–291. (Bastardillas nuestras.)

Aparte de este testigo ningún otro testigo vio que el Juez Méndez agrediera al querellado. En cambio todos los demás vieron que fue el querellado quien golpeaba al Juez Méndez. Véanse declaraciones de Myrta Pérez, Carlos Rafael Menció, Lic. Osvaldo Gil, Edwin Torruellas en la transcripción de evidencia del caso criminal. También es significativo que nadie tuvo que agarrar al Juez Méndez para detener la pelea, y que varias personas tuvieron que agarrar al querellado por la cintura y por los brazos para que éste cesara de golpear al Juez Méndez.

Un testigo de cargo, el Juez Superior José Dávila Ortiz, declaró que después de la segunda pelea el querellado le informó que el Juez Méndez lo había desafiado a pelear y la entrarse a tiros y que él (el querellado) le había pegado al Juez Méndez. El querellado omite indicarle al testigo que el Juez Méndez había extendido sus brazos hacia él, pero admite que él es quien le pega al Juez Méndez. Varios testigos declaran que el Juez Méndez, pasados algunos minutos después de ser agredido, habló de buscar su revólver en su automóvil, pero que la impresión que les dio fue que se trataba de una mera amenaza verbal pero sin intención real de llevarse a la práctica.

¿Procedería la teoría de defensa propia a base de los hechos expuestos?

Si damos credibilidad a la versión del Juez Méndez, es indudable que dicha teoría no prosperaría. En apoyo de la versión del Juez Méndez encontramos que en cada uno

de los incidentes anteriores al de autos es el querellado el que toma la iniciativa para hostigar al Juez Méndez. Es el querellado quien está disgustado con las actuaciones del Juez Méndez, tanto por haberle eliminado su corte de tránsito, como por haber intervenido en casos de su incumbencia. Es el querellado quien en la fiesta inicia la discusión con el Juez Méndez. Es únicamente el querellado quien en la discusión expresa palabras groseras contra su compañero Juez. Y él es la única persona que es observada cometiendo actos de agresión.

Por otro lado parece improbable que el Juez Méndez amenazara con entrarle a tiros al querellado, estando él (Méndez) desarmado y cuando cabía la posibilidad de que el querellado estuviera armado, como en efecto lo estaba. En cuanto a el Juez Méndez haber extendido sus brazos hacia el querellado, ni el querellado ni su testigo de corroboración pudieron dar una descripción exacta de la forma en que el Juez Méndez extendió sus brazos. Si su intención era agredir al querellado lo normal habría sido golpearlo con los puños cerrados y no con el dorso de las manos en el pecho.

No obstante, se hace innecesario dirimir el conflicto de la prueba en favor de una u otra versión de los hechos, pues aun aceptando la versión del querellado, de la misma no surge un caso de genuina defensa propia.

▮▮▮ La fuerza o violencia que la ley permite ejercer en casos de defensa propia es solamente la que fuese necesaria. No puede causarse más daño que el que sea necesario para repeler la agresión. 33 L.P.R.A. sec. 823; *Pueblo* v. *Lozada*, 37 D.P.R. 927 (1928); *Pueblo* v. *Ríos Rivera*, 88 D.P.R. 165 (1963); *Pueblo* v. *Iturrino de Jesús*, 90 D.P.R. 706 (1964). Quien causa más daño o emplea más fuerza de la necesaria no puede invocar defensa propia, sino que es culpable de acometimiento y agresión. *Pueblo* v. *Jiménez*, 48 D.P.R. 14 (1935). Cuando la prueba no demuestra quién fue el primero en agredir, pero se prueba que el acusado golpeó violentamente

al perjudicado, el acusado es *prima facie* culpable de acometimiento y agresión y sobre él descansa el peso de la prueba para demostrar que actuó en defensa propia. *Pueblo* v. *Hernández*, 26 D.P.R. 773 (1918). No se favorece la teoría de la defensa propia cuando el agresor provoca con insultos y amenazas a otro. *Pueblo* v. *Martínez*, 26 D.P.R. 786 (1918).

En el presente caso aun asumiendo que la versión correcta de los hechos es tal y como la presenta el querellado, no se trata de uno de defensa propia. Las razones son las siguientes: (1) fue él quién provocó la pelea llamando bruto al Juez Méndez; (2) él es *prima facie* culpable de la agresión, ya que golpeó violentamente al Juez Méndez y nadie vio a este último repetir, ni el querellado sufrió daños físicos en esta pelea; (3) la agresión no fue con el propósito ni se limitó a repeler un ataque: el querellado manifestó que antes de que el Juez Méndez le entrara a tiros a él, primero él le rompería la cara, lo que acusa ira y deseo de hacer daño más que defensa; (4) cuando el Juez Méndez ya había caído al piso el querellado quería continuar agrediéndolo, lo que no pudo hacer por el hecho de que varias personas lo agarraron por los brazos y por la cintura; (5) los hechos y circunstancias no justifican que un hombre de moderado valor temiera que se enfrentaba a un peligro de grave daño corporal o de muerte: el Juez Méndez supuestamente amenazó al querellado con entrarle a tiros pero no hizo ningún gesto de llevarlo a cabo, sólo extendió el dorso de las manos hacia el pecho del querellado, en un lugar donde había varios cientos de personas, siendo el querellado un hombre más alto y más joven que el Juez Méndez y estando él (el querellado) armado y el Juez Méndez no. A la fecha de los hechos el querellado tenía 37 años y el Juez Méndez 52.

▉ Desde luego, para encontrar conducta impropia o reprensible en un procedimiento como el de autos no es necesario demostrar un caso claro de acometimiento y agresión tal como si se tratase de un caso criminal. Tampoco es nece-

sariamente conducta inmoral participar en una riña (conducta inmoral de parte de un juez sería el soborno, el hurto, abuso de confianza, hacer fraudes, intervenir para fines ilegales con los testigos, con los jurados o con la prueba, etc.) pero agredir a una persona en la forma brutal e innecesaria en que lo hizo el querellado constituye una conducta altamente impropia y reprensible de parte de un juez. Un juez debe sentir unas grandes inhibiciones para utilizar la violencia y solo debe utilizarla cuando sea *indispensable* en caso de defensa propia, según ésta se define en la ley.

En relación con el segundo cargo imputado al querellado, la prueba también es conflictiva en cuanto al hecho de cómo se originó la pelea. El querellado salió del local en que se celebraba la fiesta y su familia estaba entrando en su automóvil para irse del lugar. Según versión del querellado, en ese momento varias personas comenzaron a agredirlo, cayó al piso y lo patearon. Pudo zafarse, sacó una pistola del bolsillo trasero y los atacantes comenzaron a huir. Entregó la pistola a Hilton Colón y poco después se retiró del lugar.

Según versión de Manolín Mediavilla, él se enfrentó al querellado y lo llamó abusador. El querellado profirió una obscenidad e hizo un ademán y "se formó."

En vista de que surgen contradicciones en la propia prueba de cargo en cuanto a hechos relacionados con el segundo cargo, entendemos que no hay motivos para alterar las conclusiones del Comisionado Especial en cuanto al mismo, especialmente cuando toda la evidencia testimonial relacionada con dicho cargo desfiló ante él, distinto a lo que aconteció con la prueba en cuanto al primer cargo.

■ El querellado levantó una defensa de derecho consistente en alegar que habiendo sido juzgado y absuelto previamente en el Tribunal de Distrito de Yabucoa por el delito de acometimiento y agresión grave, ello impedía la formulación de la presente querella. No tiene razón. Ese planteamiento ya ha sido resuelto en forma adversa al querellado.

*In re Tormes*, 30 D.P.R. 267, 271 (1922); *In re González Blanes*, 65 D.P.R. 381, 391 (1945); *In re Abella*, 67 D.P.R. 229, 238 (1947); *In re Liceaga*, 82 D.P.R. 252, 255, 256 (1961).

La conducta altamente impropia y reprensible del querellado justifica y hace necesario su separación del cargo de Juez de Distrito. Aunque nos es penoso debemos así hacerlo pues tenemos que mantener un standard mínimo en la conducta de los jueces, cuyo standard mínimo excluya el uso de la violencia en forma innecesaria, imprudente e inmoderada. El querellado demostró no tener—por lo menos en esta etapa de su vida—la moderación, la prudencia y la autodisciplina que son indispensables en la persona de un magistrado.

*Por todo lo anterior, el Tribunal separará al querellado de su cargo de Juez de Distrito.*

El Señor Juez Presidente y los Jueces Asociados Señores Pérez Pimentel y Ramírez Bages no intervinieron.