EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ RAMÓN ROSARIO VILLAFAÑE, acusado y apelante.

*Número:* CR-74-44        *Resuelto:* 25 de septiembre de 1974

*César Vélez González,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Candita R. Orlandi, Procuradora General Auxiliar,* abogadas de El Pueblo.

PER CURIAM: El 5 de junio de 1967 se acusó al apelante de Asesinato en Primer Grado por alegadamente dar muerte a Rafael de Jesús Meléndez el 6 de mayo de dicho año al propinarle un golpe con una tranca. Visto el juicio el 6 de setiembre de 1967, tras renuncia al jurado luego de comenzar el proceso, el juez halló culpable al acusado del delito de homicidio voluntario y le sentenció, el 28 de febrero de 1968, a cumplir una pena de dos a ocho años de presidio. Se le concedió poco después, con el allanamiento del fiscal, fianza en apelación al acusado. La transcripción de evidencia no se radicó hasta el 20 de noviembre de 1973 y el caso no quedó sometido a este Tribunal hasta el 27 de agosto de 1974.

Hemos puntualizado las fechas que anteceden para deplorar, una vez más, la extraordinaria tardanza que sufren algunas causas criminales en el proceso de su solución, en detrimento a veces de los derechos del acusado y otras en perjuicio de los intereses de la sociedad. Es de esperarse que esta sensible falla de nuestro sistema judicial pueda irse corrigiendo con la celeridad necesaria.

El apelante señala tres errores: el hecho de no haber aceptado el Tribunal Superior su alegación de defensa propia; el habérsele condenado por el delito de homicidio voluntario; y el no habérsele absuelto por la alegada existencia de duda razonable. Los errores imputados montan en efecto a un ataque contra la apreciación de la prueba efectuada por el juzgador. Debemos, por lo tanto, examinar si la evidencia en autos es suficiente para sostener la sentencia más allá de toda duda razonable.

A nuestro juicio, la sentencia dictada halla amplia base en la prueba. El primer testigo de cargo fue el doctor quien le

hizo la autopsia al cadáver de la víctima, Rafael de Jesús Meléndez. Señaló el doctor que al abrir el cráneo encontró una fractura del hueso temporal derecho debajo de la membrana que cubre el cerebro; que había una hematoma subdural; y que ésta causó una compresión del cerebro como consecuencia de la cual se produjo un fallo del tallo cerebral y la muerte. (T.E. pág. 8.) A juicio del declarante, la fractura se produjo con un objeto contundente, tal como una piedra, un cuartón, una tranca, un martillo o un tubo. (T.E. pág. 9.)

Declaró más tarde el señor Miguel Antonio Camacho, quien fue testigo ocular de los hechos. Testificó el señor Camacho que para la fecha de los hechos estaba en uno de dos negocios que posee el padre del apelante y que vio cuando el padre del acusado se enfrascó en una lucha con Ramón de Jesús, hermano de la víctima. Añadió que entonces uno de los hermanos del apelante comenzó a darle a Ramón de Jesús con una tranca y que Rafael de Jesús, la víctima, comenzó a ir hacia donde estaba su hermano. Cuando Rafael de Jesús puso los pies en la puerta para acercarse al sitio donde estaba su hermano Ramón, fue que recibió, continuó declarando el testigo Camacho, un golpe propinado por el acusado, por detrás de la oreja derecha, con una tranca de cuatro pies por tres pulgadas de ancho. (T.E. págs. 19–25.) El testigo recalcó que la víctima "No hizo nada, al salir le dieron el trancazo." (T.E. pág. 27.) Rafael de Jesús Meléndez murió el mismo día, luego de haber sido trasladado al hospital. (T.E. pág. 26.)

Otro testigo de cargo, el señor Ismael Pagán Figueroa, testificó a los mismos efectos sobre el forcejeo entre el padre del apelante y Ramón de Jesús; sobre el hecho que Rafael de Jesús se encaminó hacia el sitio de la lucha y que al comenzar a trasladarse de un negocio al otro el acusado lo golpeó con una tranca. (T.E. págs. 56–61.) También indicó el señor Ismael Pagán Figueroa que no oyó ninguna discusión de la víctima con nadie, ni con el padre del apelante ni con el apelante o ninguno de sus hermanos. (T.E. pág. 61.) También

testificó al efecto de que Rafael de Jesús, la víctima, no tenía nada en sus manos (T.E. págs. 61–62) y que el apelante le propinó el golpe mortal a Rafael de Jesús por detrás.

Los dos testigos oculares cuyo testimonio hemos reseñado se reafirmaron en los diversos aspectos vitales de sus declaraciones en el contrainterrogatorio realizado por la defensa.

■ La teoría del acusado fue que acudió a ayudar a su padre al verlo forcejeando en el piso con Ramón de Jesús y que actuó en defensa de su padre, recibiendo Rafael de Jesús, en vez de Ramón, el golpe mortal. No hay nada en la prueba presentada por la defensa ni en la totalidad de los autos, sin embargo, que justifique nuestra intervención en este caso con el criterio del juzgador. *Pueblo* v. *Ortega Otero*, 97 D.P.R. 477, 481 (1969).

■ Nos reafirmamos en que la violencia puede utilizarse en la defensa de un semejante, pero únicamente cuando la persona en peligro hubiese podido usarla legalmente en su propia defensa. Como hemos señalado repetidas veces, sin embargo, no puede invocarse la teoría de defensa propia excepto cuando se tienen motivos fundados para creer que se está en inminente peligro de perder la vida o de recibir grave daño corporal. *Pueblo* v. *De Jesús Santana*, 100 D.P.R. 791, 797 (1972). Tampoco puede infligirse más daño que el estrictamente necesario para la defensa de la vida propia o del semejante a quien se acude a ayudar. *Pueblo* v. *Ríos Rivera*, 88 D.P.R. 165 (1973).

El caso de autos es completamente distinguible de la doctrina reseñada en *Pueblo* v. *De Jesús Santana*, supra. Las circunstancias indicadas no revelan que el apelante tuvo motivos razonables para agredir mortalmente a Rafael de Jesús Meléndez, quien iba desarmado y quien no había tenido disputa alguna ni con el acusado ni con su padre. El grado del daño infligido en este caso fue también, a la luz de la prueba, innecesario.

Resolvemos, en conclusión, que el tribunal de instancia tuvo amplia base para hallar culpable de homicidio voluntario al apelante, existiendo en la prueba los fundamentos indispensables para probar los diferentes elementos del delito. Véase el Art. 203 del Código Penal, 33 L.P.R.A. sec. 635.

*Se confirmará en consecuencia la sentencia apelada.*