José A. Reyes Salcedo, recurrente, *v.* Policía de Puerto Rico, recurrida.

*Número:* AT-96-9 *Resuelto:* 13 de mayo de 1997

86

88

*Pedro J. Rodríguez Samalot*, abogado del recurrente.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy nos toca perfilar los contornos de la legítima defensa propia en un procedimiento disciplinario administrativo bajo las disposiciones del Reglamento de la Policía de Puerto Rico.

# I

El 6 de mayo de 1993 el Superintendente de la Policía de Puerto Rico (en adelante el Superintendente) emitió una resolución de cargos en la que se le imputaba al Policía José A. Reyes Salcedo haber incurrido en conducta constitutiva de las faltas graves 1 y 2 del Art. 14, Sec. 14.5 del Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981 (en adelante Reglamento de Personal), Estado Libre Asociado de Puerto Rico, pág. 100.([1]) Una vez celebrada la vista correspondiente, el Superintendente concluyó que el policía incurrió en las faltas graves imputadas, ordenando así la expulsión de Reyes Salcedo del Cuerpo de la Policía. Inconforme con la determinación del Superintendente, el policía expulsado acudió oportunamente ante la Comisión de Investigación, Procesamiento y Apelación (en adelante la C.I.P.A.), mediante un recurso de apelación.

La C.I.P.A. celebró la vista del caso el 3 de mayo, 12 de julio y 30 de agosto de 1994, a la cual comparecieron las partes y sus respectivos abogados. El 25 de octubre de 1994 la C.I.P.A. confirmó por mayoría la resolución apelada.([2]) Esta resolución se notificó a las partes el 14 de noviembre de 1994. El 23 de noviembre de 1994 el policía solicitó la reconsideración del dictamen emitido por la C.I.P.A. Esta solicitud de reconsideración fue declarada sin lugar mediante Resolución de 29 de noviembre de 1994, notificada a las partes el 7 de diciembre de 1994.

---

([1]) Las faltas graves 1 y 2 del Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981 (en adelante Reglamento de Personal), Estado Libre Asociado de Puerto Rico, pág. 100, imputadas al policía Reyes Salcedo consisten, respectivamente, en:

"1. Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.

"2. Amenazar con, o hacer uso de un arma de fuego contra cualquier persona, excepto en casos de legítima defensa propia o la de un semejante."

([2]) El Comisionado Juan José Ríos Martínez disintió de la mayoría, estando ésta a su vez compuesta por los Comisionados Edgardo Muñiz, José Veray, Jr., Vicente López Pérez y Miguel A. Lafitte.

El 10 de enero de 1995 el policía presentó ante el Tribunal Superior, Sala de San Juan, la solicitud de revisión de la resolución emitida por la C.I.P.A.([3]) A tenor con el Art. 9.004(a) del Plan de Reorganización Núm. 1 de la Rama Judicial, de 28 de julio de 1994, conocido por la Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 23f), y conforme a la Orden Administrativa Núm. XII de 23 de enero de 1995, de las Órdenes Administrativas del Juez Presidente para la Implantación de la Reforma Judicial, el caso nos fue referido. El 28 de junio de 1996 emitimos una resolución en la que concedimos a la Policía de Puerto Rico (en adelante la Policía) el término de veinte (20) días para que mostrara causa por la cual este Tribunal no debería revocar el dictamen de la C.I.P.A., que confirmó la expulsión del recurrente del Cuerpo de la Policía. La Policía no compareció a mostrar causa.

El recurrente estipuló las determinaciones de hechos recogidas en la resolución de la C.I.P.A., cuyo contenido reproducimos a continuación:

Para el 18 de noviembre de 1992 el apelante se desempeñaba como piloto de la Unidad Aerea [sic] de la Policía de Puerto Rico. Ese día a eso de las 10:00 de la noche el apelante llegó al estacionamiento del Centro Comercial Davison Plaza en Levittown. Al dejar su vehículo se dirigió a las cabinas telefónicas con el propósito de llamar a su unidad de trabajo para confirmar si al día siguiente tenía que prestar sus servicios. Mientras ésto [sic] ocurría el Pol. Efraín Claudio se encontraba frente a la Tienda Porkys hablando con el Dr. Jorge Amador Martínez y el Dr. Anselmo Fuentes. El doctor Amador le comentó que dos muchachas de apariencia rara iban cruzando por el estacionamiento. Cuando el policía Claudio miró vio al apelante en la cabina telefónica, comentó: "Mira quien está ahí" y se dirigió hacía [sic] él por la parte de atrás.

El policía Claudio y el apelante se conocían y eran amigos porque habían estado juntos en la Academia de la Policía.

Cuando el policía Claudio se acercó al apelante lo tocó por la

---

([3]) Los treinta (30) días para acudir en revisión vencían el 6 de enero de 1995 (Día de Reyes). Por tratarse de un día feriado, el término se extendió hasta el próximo día hábil, es decir, hasta el 10 de enero de 1995.

espalda y le dijo: "no te muevas, es un asalto". El apelante no reconoció la voz y al mirar por debajo de su brazo izquierdo advirtió que esa persona portaba un arma de fuego en la cintura. Inmediatamente el apelante sin voltearse tomó con su mano derecha el arma de reglamento que llevaba en la cintura e hizo tres (3) disparos seguidos por debajo de su brazo izquierdo. Cuando el apelante se volteó vio que el individuo iba cayendo a la vez que le decía: "chico, Claudio, soy yo Reyes". El policía Claudio cayó al pavimento. El Dr. Jorge Amador, quien se encontraba frente a la Tienda Porkis [sic] observó lo ocurrido desde que el policía Claudio se dirigió hacia el apelante. Al oir [sic] las detonaciones corrió hacia ellos y le prestó los primeros auxilios con la ayuda del Dr. Anselmo Fuentes Aponte.

Los disparos hechos por el apelante causaron la muerte al policía Claudio. Los tres disparos causaron cuatro heridas. Tres heridas fueron en el brazo y antebrazo izquierdo. Hubo una herida en el hemitora anterior izquierdo y otra en el lado derecho de la espalda. Al ocurrir estos hechos ambos policías vestían de civil.

Con anterioridad a estos hechos el apelante fue víctima de un asalto. De este incidente el policía Claudio tenía conocimiento, porque los hechos ocurrieron en Corozal y la investigación se realizó en Bayamón donde trabajaba el policía Claudio y estuvo con el apelante en el Cuartel durante la misma.

Las conclusiones de derecho de la C.I.P.A. se limitaron exclusivamente a decretar incurso en las faltas graves 1 y 2 del Reglamento de Personal, *supra*, al policía Reyes Salcedo, citando el texto de estas disposiciones reglamentarias.

La solicitud de revisión plantea la comisión de varios errores.(4) El recurrente argumenta, a base de las determi-

---

(4) "1. Erró la Comisión de Investigación, Procesamiento y Apelación de la Policía de Puerto Rico al encontrar incurso al Apelante por las Faltas Graves conforme a las Reglas 1 y 2 del Reglamento de la Policía de Puerto Rico confirmando la expulsión del Apelante por parte del Superintendente de la Policía de Puerto Rico, la cual ocurrió el 6 de mayo de 1993.

. . . . . . . .

"2. Erró la Comisión al confirmar la Resolución de despido del Superintendente cuando no se probó la culpabilidad del Apelante más allá de duda razonable ante la prueba conflictiva presentada por la Policía de Puerto Rico.

"3. Erró la Comisión al no darle veracidad a la defensa propia presentada por el Apelante, se estipuló la declaración jurada del Apelante ante la Policía de Puerto Rico, la cual fue corroborada por los peritos que se utilizaron por el Ministerio Fiscal y en este proceso por la Policía de Puerto Rico y en adición por los agentes investi-

naciones de hecho de la C.I.P.A., que erró ésta al hallar al policía Reyes Salcedo incurso en las faltas graves 1 y 2 del *Reglamento de Personal, supra,* y por ende, al confirmar su expulsión del Cuerpo de la Policía. Analizamos este recurso a la luz de los argumentos planteados.

## II

Generalmente la revisión judicial de decisiones administrativas abarca tres (3) áreas, extendiéndose a: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hecho conforme al criterio de la evidencia sustancial, y (3) la revisión completa y absoluta de las conclusiones de derecho. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme,* Colombia, Ed. Forum, 1993, pág. 521.[5] Tratándose de la revisión judicial de las decisiones de la C.I.P.A., ésta se limita a "cuestiones de derecho y a la determinación de si existe o no evidencia sustancial para sostener las conclusiones de hecho". 1 L.P.R.A. sec. 173. La interpretación judicial se ha encargado de delinear las directrices estatuidas en cuanto al alcance de la revisión judicial.

Una vez más resaltamos la importancia de las de-

gadores que fueron utilizados por El Pueblo de Puerto Rico en la esfera criminal y por la División Legal de la Policía de Puerto Rico en el presente caso.

"4. Erró la Comisión al no determinar a base de la prueba presentada por la Policía de Puerto Rico que el occiso, Policía Efraín Claudio, en el caso que dió margen a la expulsión del Apelante, fue negligente en su conducta.

"5. Erró la Comisión al no tomar en consideración la conducta negligente, falta de madurez y cordura del occiso quien provocó su propia muerte."

[5] Esta norma está contenida en la Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico de 1988, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2175, disponiendo sobre el alcance de la revisión judicial:

"El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

"Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

"Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."

terminaciones de hecho y las conclusiones de derecho consignadas en una decisión administrativa al ejercer nuestra función revisora. Ya anteriormente tuvimos ocasión de enumerar los objetivos que persigue el efectuar determinaciones de hecho y conclusiones de derecho, estando entre éstos: (1) proporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, y estando ésta mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intraagencial, particularmente cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la prueba, y (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza (*expertise*). *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265 (1987).

Constantemente nos han merecido gran consideración y respeto las conclusiones e interpretaciones de los organismos administrativos especializados, limitándonos en el ejercicio de nuestra función revisora a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Fuertes y otros v. A.R.Pe.*, 134 D.P.R. 947 (1993); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). No obstante, la deferencia reconocida no equivale a la renuncia de nuestra función revisora en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley. *Fuertes y otros v. A.R.Pe.*, supra, pág. 953; *Rodríguez v. Comisión Industrial*, 99 D.P.R. 368, 376 (1970). "[A]l evaluar los ca-

sos es necesario distinguir entre cuestiones de interpreta-
ción estatutaria, en la que los tribunales son especialistas,
y cuestiones propias para la discreción o pericia
administrativa." *Adorno Quiles v. Hernández*, 126 D.P.R.
191, 195 (1990). A fin de cuentas, recordemos que la norma
de la evidencia sustancial, aplicable a las determinaciones
de hecho, persigue evitar la sustitución del criterio del or-
ganismo administrativo en materia especializada por el
criterio del tribunal revisor. En cuanto a conclusiones es-
trictamente de derecho, éstas podrán revisarse en todos
sus extremos. *López v. Junta Planificación*, 80 D.P.R. 646,
672–673 (1958). Esta distinción entre determinaciones de
hecho y conclusiones de derecho en el ámbito de la revisión
judicial amerita deslindar unas de otras. "Debe quedar
claro que el ingrediente esencial de este proceso es la fun-
ción de aplicar el derecho a los hechos. La aplicación del
derecho a los hechos básicos que se han determinado sirve
de marco para comenzar la tarea de formular la cuestión
de derecho presente en la revisión judicial." Fernández
Quiñones, *op. cit.*, pág. 544.

La cuestión de derecho presente en la revisión ju-
dicial puede surgir en el contexto de la aplicación errónea
de un reglamento a determinados hechos. Después de todo,
los reglamentos crean un estado de derecho que protege a
quienes actúan bajo sus disposiciones. Tal es el estado de
derecho que surge cuando se promulga un reglamento para
implementar la ejecución de una ley y complementarla.
*P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 409
(1980). El Reglamento de Personal implementa y, a la vez,
complementa las disposiciones legales que facultan al Su-
perintendente a determinar por reglamento las obligacio-
nes, responsabilidades y conducta de los miembros del
Cuerpo de la Policía, 25 L.P.R.A. secs. 1007, 1012, 1013 y
1014.

## III

 La falta 2 del Reglamento de Personal, *supra*, pág. 100, cataloga como grave el que un policía "[a]mena[ce] con, o ha[ga] uso de un arma de fuego contra cualquier persona, excepto en casos de legítima defensa propia o la de un semejante". Claramente se reconoce como una excepción a la comisión de esta falta grave que el policía haya actuado en legítima defensa propia. Los requisitos de esta defensa penal serán aplicables a la esfera administrativa en situaciones análogas a la presente, es decir, en el contexto de procedimientos disciplinarios contra miembros del Cuerpo de la Policía por infracciones a la referida falta.[6] Sin embargo, debe entenderse que la utilización de esta defensa penal en la esfera administrativa no altera el grado de prueba (*quantum*) operante en procedimientos administrativos. La conducta de un miembro de la Policía a quien se le imputa la comisión de faltas bajo el Reglamento de Personal no tiene que ser probada más allá de toda duda razonable. *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 749 (1978); *Mundo v. Tribunal Superior*, 101 D.P.R. 302, 306 (1973). También se debe recordar que el

---

[6] Aunque ante nuestra consideración tenemos una situación que permite la aplicación de la norma penal sobre legítima defensa propia, por disposición expresa de la Falta Grave 2 del Reglamento de Personal, *supra*, en *In re De Castro*, 100 D.P.R. 184 (1971), reconocimos dentro de un procedimiento disciplinario contra un juez, que la conducta violenta de éste, ausente el haber actuado en legítima defensa propia, constituye conducta altamente impropia que amerita su separación del cargo de Juez de Distrito.

Sin embargo, adviértase que en *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720, 743 (1978), expresamos que para cumplir con el debido proceso de ley, no es necesario aplicar a procedimientos disciplinarios administrativos todas aquellas normas aplicables a procedimientos criminales. A estos efectos manifestamos:

"... No puede afirmarse, sin embargo, que sean de aplicación a acciones administrativas disciplinarias, en términos absolutos, todos los criterios elaborados para los procedimientos criminales. No puede hacerse tal aplicación indiscriminadamente. Hay que analizar los fundamentos y los propósitos de cada norma penal que se quiera aplicar al proceso administrativo. Hay también que analizar el propósito y las consecuencias de ese proceso administrativo al cual se pueden aplicar las normas de origen penal. Sólo si los fines o fundamentos de la norma penal cumplen el mismo propósito en el proceso administrativo, si su aplicación no crea un descalabro en el orden administrativo, procede su aplicación."

procedimiento criminal y el procedimiento disciplinario administrativo son independientes uno del otro. *Mundo v. Tribunal Superior*, supra, págs. 304–305; *Cruz v. Garrido Morales*, 58 D.P.R. 653, 662–663 (1941). Así las cosas, la absolución en un procedimiento criminal no confiere inmunidad en relación con un procedimiento disciplinario administrativo por los mismos hechos. *Pagán Hernández v. U.P.R.*, supra.

El derecho romano reconoció la legítima defensa en protección de los derechos de propiedad en aquellos casos en que estuviese implicado el riesgo personal y la protección a la honra. En sus orígenes, el derecho anglosajón permitió el empleo de fuerza mortal por parte de la víctima cuando se trataba de un ataque por delito grave, mientras exigía "retirarse hasta la pared" previo al empleo de fuerza mortal por parte de la víctima cuando no se trataba de un ataque por delito grave. "En tiempos modernos la legítima defensa se refiere a cualquier situación que involucre defensa de la persona, incluyendo ataques rápidos en delitos menos graves así como también delitos graves." D. Nevares-Muñiz, *Derecho Penal Puertorriqueño: Parte General*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1995, pág. 226.

En Puerto Rico rige actualmente en materia de legítima defensa de la persona el Art. 22 del Código Penal, 33 L.P.R.A. sec. 3095, cuyo texto establece, en lo pertinente:

> No incurre en responsabilidad el que defiende su persona, sus bienes o derechos, o su morada, o la persona, bienes o derechos, o morada de otros en circunstancias que hicieren creer razonablemente que se ha de sufrir un daño inminente, siempre que hubiere necesidad racional del medio empleado para impedir o repeler el daño, falta de provocación suficiente del que ejerce la defensa, y no se inflija más daño que el necesario al objeto.
>
> Para justificar el dar muerte a un ser humano, cuando se alegue legítima defensa, es necesario tener motivos fundados para creer que al dar muerte al agresor se hallaba el agredido o

la persona defendida en inminente o inmediato peligro de muerte o de grave daño corporal.

■ La concurrencia de los requisitos siguientes es indispensable para que progrese la legítima defensa de la persona en los casos en que se ha producido la muerte del agresor: (1) que la persona tenga una creencia razonable de que se ha de sufrir un daño inminente; (2) que haya necesidad racional del medio utilizado para impedir o repeler el daño; (3) que no haya provocación de quien invoca la defensa; (4) que no se inflija más daño que el necesario para repeler o evitar el daño, y (5) que la persona tenga motivos fundados para creer que al dar muerte al agresor se hallaba en inminente o inmediato peligro de muerte o de grave daño corporal. Nevares-Muñiz, *op. cit.*, págs. 227–228.

■ En esencia, "las circunstancias que concurran para justificar la defensa propia deben ser suficientes para excitar el temor de una persona razonable". *Pueblo v. González Román*, 129 D.P.R. 933, 940 (1992), citando a *Pueblo v. De Jesús Santana*, 100 D.P.R. 791, 798 (1972). Esto se refiere propiamente al criterio de la persona prudente y razonable. *Pueblo v. González Román*, supra, pág. 941. A base de este criterio objetivo, se juzga el temor de determinada persona comparándolo con el de una razonable, de ordinaria prudencia, o un buen padre o una buena madre de familia. El marco de comparación es con aquella persona que "[s]abe todo lo que es de conocimiento corriente en la comunidad", lo cual permite que este conocimiento común se le impute a cualquiera otra. J.A. Cuevas Segarra, *La responsabilidad civil y el daño extracontractual en Puerto Rico*, Hato Rey, Pubs. J.T.S., 1993, pág. 89. Instituir este criterio como patrón o modelo necesariamente "varía según los tiempos y lugares, según las circunstancias históricas y la comunidad de que se trate". J. Echeverría, *Lecciones preliminares de teoría general del Derecho y del cambio social*, 55 Rev. Jur. U.P.R. 371, 446 (1986).

Quien invoca esta defensa ha de creer, al igual que una persona prudente y razonable, que se sufrirá un daño en el futuro inmediato o que el mismo se está llevando a cabo. Esta creencia en cuanto a sufrir un daño inminente es menester interpretarla conjuntamente con el último requisito enumerado. Necesariamente ha de existir una creencia razonable de que se está ante un inminente peligro de muerte o de grave daño corporal para justificar el dar muerte al agresor. Ilustra la profesora Nevares-Muñiz:

> ... [L]o importante no es si el que invoca la defensa estaba en *verdadero peligro de perder su vida o de sufrir grave daño*, sino "si las circunstancias eran tales que inducían a una persona prudente a creer que su persona estaba expuesta a tal peligro y racionalmente podía así creerlo y tenía suficiente causa para estimarlo". (Énfasis suplido.) Nevares-Muñiz, *op. cit.*, pág. 228.

Es preciso recordar que aunque la conducta de quien invoca la defensa ha de ser la de una persona prudente y razonable, ante un peligro repentino e inminente que requiera acción inmediata, dicha conducta no puede ser pesada en balanzas muy sofisticadas. *Pueblo v. González Román*, supra, pág. 940; *Pueblo v. De Jesús Santana*, supra.

Deben tomarse en consideración "la gravedad del ataque, la naturaleza o importancia del bien que se tutela y las condiciones personales de las partes" al evaluar la necesidad racional del medio utilizado para impedir o repeler el daño. Nevares-Muñiz, *op. cit.*, pág. 231. De ahí que el medio utilizado sea imprescindible de acuerdo con la naturaleza y la importancia del bien jurídico tutelado. Íd., pág. 232.

Por otra parte, atiende a la proporcionalidad el que una persona no inflija más daño que el necesario para repeler o evitar el daño. "La cuestión de la proporcionalidad a lo que está relacionada es a la gravedad del daño que se ocasiona por el que invoca la legítima defensa; daño en

proporción a la inminencia del daño original que se intenta repeler." Nevares-Muñiz, *op. cit.*, pág. 232. El aspecto de la proporcionalidad, por no tener base matemática alguna, pone de manifiesto la imposibilidad de utilizar juicios de precisión al juzgar la conducta de una persona que se defiende. "Muchas veces la acción es tan rápida y tan inesperada, que el sujeto agredido no tiene más salida que actuar con la velocidad que sus reflejos le permiten." Íd., pág. 233.

El invocar la defensa no requiere que la persona retroceda hasta colocarse en una posición de indefensión. *Pueblo v. González Román*, supra; *Pueblo v. De Jesús Santana*, supra. Es suficiente demostrar que esta persona no ha provocado al agresor para que le sea permitido beneficiarse de esta defensa.

Procedamos a aplicar el derecho expuesto a las determinaciones de hecho efectuadas por la C.I.P.A.

Entre otras cosas, la C.I.P.A. concluyó que el policía Reyes Salcedo portaba su arma de reglamento cuando se detuvo alrededor de las 10:00 P.M. de 18 de noviembre de 1992 en un centro comercial en Levittown, y mientras se encontraba en una cabina telefónica le sorprendió un individuo, a quien no reconoció, que le tocó por la espalda y le dijo: "no te muevas, es un asalto." También concluyó que el policía Reyes Salcedo, aún estando de espaldas, observó por debajo de su brazo izquierdo que quien le amenazaba portaba un arma de fuego en la cintura. A todas luces, en el Puerto Rico de 1992 el anuncio de un asalto en un estacionamiento de un centro comercial a las diez (10) de la noche, y el contacto físico por la espalda, acompañado de haber visto que el individuo estaba armado, evidencian la inminencia del daño. Como cuestión de hecho, el recurrente creyó que el daño ya se estaba llevando a cabo. En el Puerto Rico de 1992 cualquier persona prudente y razonable hubiese creído que se trataba de un verdadero asalto en el cual corría peligro su vida o podía al menos sufrir grave

daño corporal. El hecho de que el policía Reyes Salcedo portaba su arma de reglamento, razonablemente aumentaba su creencia de que corría peligro su vida o al menos estaba expuesto a sufrir grave daño corporal. Una persona prudente y razonable en las circunstancias del policía Reyes Salcedo hubiera temido también por su vida. Aunque entendemos que el policía Claudio no representaba un verdadero peligro a la vida del recurrente, este último no podía creer razonablemente que se tratara de una broma de mal gusto por parte de otro compañero, miembro del Cuerpo de la Policía, mucho menos cuando el agresor vestía de civil. Lo anterior nos conduce directamente a evaluar la necesidad racional del medio utilizado para impedir o repeler el daño. Las circunstancias expuestas ponen de manifiesto que el bien tutelado no era tan sólo la propiedad, sino la vida misma; el bien de valor más importante de un ser humano. Además, el hecho de que el policía Reyes Salcedo estuviese armado le hacía creer razonablemente que si su agresor se percataba de esto lo ultimaría inmediatamente. Es decir, se reducía a una cuestión de quién utilizaría su arma de fuego primero. No podemos cerrar los ojos a las realidades de los crímenes violentos en nuestra isla. Una persona prudente y razonable en las circunstancias del recurrente creería que existía una necesidad racional de utilizar su arma de fuego.

Además, concluyó la C.I.P.A. que al percatarse el aquí recurrente del arma que llevaba consigo el individuo que le anuncia el asalto, sin voltearse, tomó con su mano derecha su arma de reglamento y disparó tres (3) veces por debajo de su brazo izquierdo. Estos hechos son indispensables para atender a la proporcionalidad o gravedad del daño ocasionado por quien invoca la defensa. Se podría argumentar que un solo disparo bastaba para repeler al agresor. No obstante, esto ignoraría que el recurrente, sin voltearse, siguiendo así las instrucciones del agresor en cuanto a no moverse, dispara por debajo de su brazo

izquierdo. La posición incómoda en que se efectúan los disparos y el hecho de no saber exactamente la posición del agresor nos permiten inferir que, al tratarse de un acto rápido e inesperado, actuó siguiendo sus mejores reflejos. Obsérvese que tan pronto el recurrente se voltea y ve a quien le había disparado no continúa haciéndolo.

Por último, no existe en las determinaciones de la C.I.P.A. hecho alguno que denote provocación por parte del recurrente hacia el agresor ultimado. Ni siquiera puede identificarse que el recurrente tuviese alguna motivación previa. La C.I.P.A. concluyó que el policía Claudio y el policía Reyes Salcedo eran amigos desde que estuvieron en la Academia de la Policía.

Como cuestión de derecho, las determinaciones de hecho de la C.I.P.A. justifican la procedencia de la legítima defensa propia del policía Reyes Salcedo, pues las circunstancias resultaron suficientes para excitar el temor de una persona prudente y razonable.

## IV

La falta grave 1 del Reglamento de Personal, *supra*, pág. 10, consiste en que el policía demuestre "incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades".

 Resulta imprescindible evaluar la conducta de un miembro de la Uniformada a quien se le imputa contravenir la falta grave 1 del Reglamento de Personal, *supra*, a la luz de sus deberes, funciones y responsabilidades. Por lo tanto, nos hemos de referir inicialmente al Art. 3 de la Ley de la "Policía de Puerto" Rico de 1974, Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 L.P.R.A. sec. 1003. El aludido articulado crea un organismo civil de orden público denominado "Policía de Puerto Rico", al cual le impone el deber de: (1) proteger a las per-

sonas y a la propiedad; (2) mantener y conservar el orden público; (3) observar y procurar la más absoluta protección de los derechos civiles del ciudadano; (4) prevenir, descubrir y perseguir el delito, y (5) compeler la obediencia a las leyes, las ordenanzas municipales y los reglamentos, dentro de la esfera de sus atribuciones. Véase también el Art. 5, Secs. 5.1 y 5.2 del Reglamento de Personal, *supra*, págs. 14–15. La naturaleza de estos deberes y atribuciones es constante, ya que los miembros de la Policía conservan su condición de tales en todo momento, aun cuando están libres, siempre que se encuentren dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico. 25 L.P.R.A. sec. 1018(g). Recientemente, expresamos que la condición de los policías era ininterrumpida, pues el crimen no tenía horario específico. *Sánchez Soto v. E.L.A.*, 128 D.P.R. 497 (1991).

La prevención del crimen, por parte de un miembro del Cuerpo de la Policía, no excluye aquellos actos criminales que puedan darse contra su propiedad o persona misma. "Lo contrario resultaría en la anomalía de que el policía tendría el deber de defender las vidas de sus semejantes, excepto la suya propia. El policía, al igual que los demás ciudadanos, tiene el derecho a convivir con su prójimo en paz, sin que impunemente se cometan en su contra actos delictivos." *Sánchez Soto v. E.L.A.*, supra, pág. 503.

Las reglas que rigen a la Policía, promulgadas por el Superintendente, establecen la conducta que deben observar sus miembros y también particularizan aquella que se desvía de sus deberes, funciones y responsabilidades. Sirven claramente para ilustrar lo antes dicho las reglas sobre portación y uso de armas de reglamento y las reglas sobre faltas que conllevan la imposición de sanciones disciplinarias. El Capítulo II(F)(5) del Manual sobre Uso y Manejo de Armas de Fuego indica que un policía portará su arma de reglamento en todo mo-

mento, aun estando fuera de servicio.([7]) En cuanto al uso del arma de fuego, según explicamos anteriormente, el Reglamento de Personal declara que un policía no podrá amenazar con o hacer uso de un arma de fuego contra una persona, salvo en casos de legítima defensa propia o la de un semejante.

¿Constituye negligencia la utilización de un arma de reglamento que porta un policía fuera de su horario de servicio, dándole muerte a una persona en legítima defensa propia?([8])

En Puerto Rico existen tanto la negligencia civil como la criminal. La diferencia entre una y otra más bien gira en torno a una cuestión de gradación en la conducta desplegada. *Pueblo v. Ruiz Ramos*, 125 D.P.R. 365, 387 (1990). La negligencia civil de omisión se define como la falta del debido cuidado, consistente en no anticipar y prever las consecuencias racionales de la omisión de un acto que una persona prudente habría de prever en las mismas circunstancias. *Ramos v. Carlo*, 85 D.P.R. 353, 358 (1962). El no anticipar y prever las consecuencias racionales de la omisión de un acto debe estar basado en las probabilidades y no en las posibilidades. *Pacheco v. A.F.F.*, 112 D.P.R. 296, 301 (1982). La negligencia criminal, según el Art. 16 del Código Penal, 33 L.P.R.A. sec. 3063, consiste en producir un resultado delictivo sin quererlo, por impruden-

---

([7]) Aunque el Manual sobre Uso y Manejo de Armas de Fuego, revisado en 1987, estuvo vigente al momento en que ocurrieron los hechos en cuestión, actualmente rige la Orden General Núm. 95-13 del Superintendente de la Policía sobre normas y procedimientos para el uso, la portación, el mantenimiento y disposición de las armas de reglamento. El subinciso (6) del inciso (E) de la mencionada orden, mantiene en vigor la obligación de los policías de portar su arma de reglamento en todo momento, aun estando fuera de servicio.

([8]) En ausencia de conclusiones de derecho, relativas a los conceptos *incapacidad manifiesta, ineptitud y parcialidad,* y tomando en consideración las determinaciones de hecho efectuadas por la C.I.P.A., estimamos improcedente abordar la discusión de los conceptos aludidos. Nótese que la falta de cuidado o el descuido está expuesto en la definición de lo que constituye negligencia. Por lo tanto, no habremos de discutirlo individualmente.

Nuevamente reiteramos que la ausencia de conclusiones de derecho perjudica el apropiado ejercicio de nuestra función revisora.

cia, descuido, falta de circunspección, impericia o inobservancia de la ley, a base del criterio de la persona prudente y razonable. *Pueblo v. Ruiz Ramos*, supra, pág. 389. La negligencia criminal es mayor en grado que la negligencia civil. *Pueblo v. Ruiz Ramos*, supra, pág. 388.

Ahora bien, la legítima defensa propia es una causa excluyente de negligencia cuando así lo autoriza alguna disposición legal. J. Santos Briz, *La responsabilidad civil: derecho sustantivo y derecho procesal*, 5ta ed., Madrid, Ed. Montecorvo, 1989, pág. 35.

El policía Reyes Salcedo portaba legítimamente su arma de reglamento y la utilizó en legítima defensa propia. El recurrente cumplió con sus deberes, funciones y responsabilidades, obedeciendo las disposiciones estatutarias y reglamentarias descritas previamente. La inobservancia de las referidas disposiciones estatutarias y reglamentarias hubiera dado lugar a negligencia. La utilización del arma de reglamento en legítima defensa propia por parte del policía Reyes Salcedo, conforme lo autoriza la falta grave 2 del Reglamento de Personal, *supra*, hace incompatible cualquier determinación de negligencia por parte de éste en el desempeño de sus deberes, funciones y responsabilidades.

Por los fundamentos anteriormente expuestos, *se revoca la resolución de la C.I.P.A. y se ordena al Superintendente de la Policía la reinstalación del recurrente y el pago de los correspondientes sueldos dejados de percibir.*

Los Jueces Asociados Señores Hernández Denton y Fuster Berlingeri emitieron unas opiniones disidentes.

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton.

La decisión que hoy toma este Tribunal es claramente

contradictoria con nuestros pronunciamientos previos en los cuales continuamente hemos reafirmado el deber del Superintendente de la Policía de vigilar que los miembros de ese Cuerpo observen las normas reglamentarias que rigen su comportamiento. De igual forma, socava la responsabilidad que ese funcionario público tiene de velar por que sus miembros usen de forma adecuada su arma de reglamento.

Por otro lado, aunque reconocemos que la legítima defensa propia es invocable como eximente de responsabilidad en procedimientos disciplinarios administrativos al amparo de las disposiciones del Reglamento de Personal de la Policía de Puerto Rico, bajo los hechos específicos que motivaron la expulsión del aquí recurrente de ese Cuerpo, no se satisfacen los requisitos sustantivos para que ésta pueda ser invocada con éxito. En vista de ello, disentimos.

I

Los hechos del caso de autos, por demás sencillos, no están en controversia.

Alrededor de las 10:00 de la noche de 18 de noviembre de 1992, mientras José A. Reyes Salcedo, entonces piloto de la Unidad Aérea de la Policía, de Puerto Rico, se encontraba usando un teléfono público del centro comercial Davison Plaza en Levittown, un compañero suyo de la Academia de la Policía, de nombre Efraín Claudio, lo vio y decidió saludarlo. Al acercarse a Reyes Salcedo y sin que éste se diera cuenta, "lo tocó por la espalda y le dijo: 'no te muevas, es un asalto' ". Según señala la resolución recurrida de la Comisión de Investigación, Procesamiento y Apelación (en adelante la C.I.P.A.), Reyes Salcedo no reconoció la voz "y al mirar por debajo de su brazo izquierdo advirtió que esa persona portaba un arma de fuego en la cintura". Fue entonces cuando Reyes Salcedo sacó su arma de reglamento y por debajo de su brazo izquierdo, mientras

aún permanecía de espaldas, hizo tres (3) disparos seguidos. Eventualmente, el policía Efraín Claudio murió como consecuencia de las heridas recibidas. En esa ocasión ambos policías vestían ropa de civil.

Por estos hechos, el Superintendente de la Policía le imputó a Reyes Salcedo haber incurrido en conducta constitutiva de la falta grave 1 (demostrar incapacidad manifiesta, ineptitud, descuido o negligencia en el desempeño de sus funciones) y la falta grave 2 (hacer uso de su arma de fuego contra otra persona, excepto en casos de legítima defensa propia) del Art. 14 del Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981, Estado Libre Asociado de Puerto Rico, pág. 100.[1]

Luego de la vista administrativa correspondiente, el Superintendente estimó que Reyes Salcedo incurrió en las conductas constitutivas de las faltas imputadas y decretó su expulsión del Cuerpo de la Policía. Inconforme, Reyes Salcedo apeló ante la C.I.P.A., la cual confirmó la determinación del Superintendente.

Así las cosas, Reyes Salcedo acudió ante el Tribunal Superior. En su solicitud de revisión planteó cinco (5) errores que se circunscriben fundamentalmente a lo siguiente: (1) si erró la C.I.P.A. al determinar que se configuraron las faltas 1 y 2 del Reglamento de Personal de la Policía de Puerto Rico, *supra*; (2) si erró la C.I.P.A. al llegar a esa determinación aun cuando no fue probada la culpabilidad de Reyes Salcedo más allá de duda razonable; (3) si erró la

---

[1] Las faltas graves 1 y 2 (Art. 14, Sec.145) del Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981, Estado Libre Asociado de Puerto Rico, pág. 100, son las siguientes:

"1. Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.

"2. Amenazar con, o hacer uso de un arma de fuego contra cualquier persona, excepto en casos de legítima defensa propia o la de un semejante."

El mismo reglamento define las faltas graves como "[a]quellas faltas aplicables a miembros de la Fuerza que como castigo conlleven expulsión permanente de la Policía de Puerto Rico, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses". Art. 4(22) del Reglamento de Personal de la Policía de Puerto Rico, *supra*, págs. 6–7.

C.I.P.A. al no resolver que aplicaba la defensa de legítima defensa propia, y (4) si erró la Comisión al no estimar que el incidente lo provocó la actuación negligente de la víctima.

Luego de los cambios ocurridos en la estructura judicial, el recurso fue referido ante este Tribunal. La Policía de Puerto Rico nunca compareció ante nos para expresar su posición.

Hoy, una mayoría de este Tribunal correctamente esboza la norma y doctrina aplicable en cuanto al ámbito de intervención judicialmente permisible en revisiones administrativas. De igual forma, correctamente resuelve que la legítima defensa puede ser invocada con éxito en procedimientos administrativos disciplinarios de la Policía de Puerto Rico. Sin embargo, la mayoría se equivoca en su análisis con relación a si la conducta desplegada por Reyes Salcedo el 18 de noviembre de 1992 satisface los requisitos que permiten invocar con éxito la legítima defensa propia como justificación o eximente de responsabilidad. En vista de ello, la opinión de este Tribunal revoca a la C.I.P.A., organismo que a su vez había confirmado la determinación del Superintendente de la Policía, y ordena la reinstalación de Reyes Salcedo con el correspondiente pago del salario dejado de percibir desde el momento de la expulsión. Disentimos con respecto a que bajo los hechos específicos del caso quedó configurada la legítima defensa propia.

## II

Como es sabido, una parte adversamente afectada por una decisión administrativa final puede acudir al foro judicial para solicitar la revisión de esa decisión, una vez agota los remedios administrativos que el propio organismo provee para cuestionarla. Satisfechos los requisitos jurisdiccionales correspondientes; la revisión judicial se circunscribe a determinar: (1) si el remedio concedido por

la agencia fue apropiado; (2) si las determinaciones de hecho efectuadas por la agencia están sostenidas por evidencia sustancial que obre en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho fueron correctas. Véanse: *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521 (1993); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194 (1987); *Rubin v. Trías Monge*, 111 D.P.R. 481 (1981). Véase, además, D. Fernández Quiñones, *Derecho administrativo y Ley Uniforme de Procedimientos Administrativos,* Colombia, Ed. Forum, 1993, pág. 521.

Al respecto, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (en adelante L.P.A.U.), 3 L.P.R.A. sec. 2101 *et seq.*, según enmendada, expresamente dispone que las determinaciones de hechos efectuadas por las agencias administrativas serán sostenidas judicialmente "si se basan en evidencia sustancial que obra en el expediente administrativo", mientras que las conclusiones de derecho podrán ser revisadas por el tribunal "en todos sus aspectos". 3 L.P.R.A. sec. 2175. De forma cónsona con este mandato legislativo, las revisiones judiciales de la C.I.P.A. "estará[n] limitad[as] a cuestiones de derecho y a la determinación de si existe o no evidencia sustancial para sostener las conclusiones de hecho de la Comisión". Art. 3 de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 173. Como puede apreciarse, la "intensidad de la revisión varía si se trata de una cuestión de derecho o de hecho". Fernández Quiñones, *op. cit.*, pág. 524.

De ordinario, los tribunales miramos con deferencia las determinaciones fácticas efectuadas por las agencias administrativas. También, brindamos deferencia a las interpretaciones que efectúan las agencias con relación a la ley cuya administración le fue encomendada por la Legislatura. En tal caso, se presume que la agencia posee un conocimiento especializado en aquellos asuntos que le fueron encomendados por el legislador que merece ser visto

con respeto y deferencia. Por ello, nuestra función revisora se limita a determinar si la interpretación o actuación administrativa cuestionada fue razonable, a la luz de las pautas trazadas por el legislador. *Com. Seguros P.R. v. Gen. Accident Ins. Co.*, 132 D.P.R. 543 (1993). Por su parte, las conclusiones de derecho efectuadas por las agencias administrativas, que no involucren interpretaciones efectuadas dentro de la zona de especialización de la agencia, son revisadas por los tribunales en todos sus aspectos.

En ocasiones, sin embargo, la determinación de cuándo nos encontramos ante un asunto puramente fáctico o puramente de derecho resulta, en particular, difícil. De hecho, la doctrina reconoce instancias en donde la interrelación entre ambos campos resulta prácticamente deslindable. En estos casos se advierte que estamos ante cuestiones mixtas de hecho y de derecho. Fernández Quiñones, *op. cit.*, pág. 548. Aún así, existe consenso en la doctrina en términos del escrutinio de análisis aplicable en cada instancia: ante la revisión de cuestiones fácticas se brinda deferencia a la agencia administrativa; ante cuestiones de derecho, se revisa la determinación administrativa en todos sus aspectos, y ante cuestiones mixtas de hecho y de derecho, se considera que estamos ante cuestiones de derecho, por lo que la actuación administrativa se revisa a plenitud. *Garriga Bengoa v. Comisión Industrial*, 87 D.P.R. 715 (1963). Véase, además, Fernández Quiñones, *op. cit.*, pág. 548.

En el caso de autos nos encontramos ante la revisión de una determinación efectuada en un procedimiento disciplinario administrativo. Los cargos imputados a Reyes Salcedo fueron: "[d]emostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades" (falta grave 1 del Reglamento de Personal de la Policía, *supra*, pág. 100), y "[a]menazar con, o hacer uso de un arma de fuego contra cualquier persona, excepto en casos de legítima defensa propia o la de un semejante" (falta grave 2, *supra*). A

juicio, tanto del Superintendente de la Policía como de la C.I.P.A., Reyes Salcedo incurrió en las conductas proscritas. De igual forma, tanto el Superintendente de la Policía como la C.I.P.A., estimaron que la expulsión del Cuerpo de la Policía era la sanción adecuada.

Los hechos no están en controversia. La función de la C.I.P.A., en este sentido, era determinar si a la luz de esos hechos se configuraron las faltas imputadas y si la sanción impuesta a Reyes Salcedo por el Superintendente de la Policía fue adecuada. Debido a que se trata de un procedimiento administrativo, para esta determinación sólo se requiere preponderancia de la prueba. Ahora bien, la conclusión que pudo hacer ese organismo en términos de que Reyes Salcedo actuó en legítima defensa como eximente de la conducta proscrita en la falta grave 2, constituye una conclusión de derecho revisable por el foro judicial "en todos sus aspectos".

Luego de evaluar la argumentación de Reyes Salcedo, la mayoría concluye que su conducta satisface los requisitos sustantivos que configuran la legítima defensa, por lo que de acuerdo con el Reglamento de Personal de la Policía no puede ser hallado responsable por la falta grave 2. Asimismo, estimó que la legítima defensa excluye la posibilidad de actuar con negligencia. En vista de ello, la mayoría estima que tampoco es posible encontrar a Reyes Salcedo incurso en la falta grave 1. Examinemos inicialmente si Reyes Salcedo actuó en legítima defensa de forma tal que su conducta quede justificada.

## III

El Reglamento de Personal de la Policía de Puerto Rico no provee una definición de lo que debe concebirse como legítima defensa propia en el contexto administrativo disciplinario de ese Cuerpo. De este modo, debemos remitirnos a las normas sustantivas que rigen esta figura en el

derecho penal. En este extremo coincidimos con la opinión del Tribunal cuando afirma que los requisitos de la legítima defensa de la esfera penal se aplicarán a la esfera administrativa en situaciones análogas a la que presenta el caso de autos, sin que al hacerlo se altere el *quantum* de prueba requerido para el procedimiento administrativo.

Sabido es que la legítima defensa propia, según dispuesta en el Art. 22 del Código Penal, 33 L.P.R.A. sec. 3095, es un eximente de responsabilidad que pretende "justificar el daño a otra persona o a sus bienes cuando la persona, bienes o derechos del que invoca la defensa, o de un tercero, están bajo ataque o peligro inminente por parte de quien provocó la situación". D. Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, 3ra ed. rev., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1995, pág. 36. Su procedencia requiere demostrar que se satisfacen varios requisitos. Primero, la persona que la invoca debe tener una creencia razonable de que ha de sufrir un daño inminente. Segundo, el medio utilizado para repeler ese daño debe ser racionalmente necesario. Tercero, no debe haber mediado provocación por parte de la persona que invoca la defensa. *Pueblo v. González Román*, 129 D.P.R. 933 (1992); *Pueblo v. De Jesús Santana*, 100 D.P.R. 791 (1972); *Pueblo v. Ríos Rivera*, 88 D.P.R. 165 (1963). Véase D. Nevares-Muñiz, *Derecho penal puertorriqueño: parte general,* 1ra reimp., Hato Rey, Ed. Inst. Desarrollo del Derecho, 1990, pág. 193.

Para los casos en los que la legítima defensa sea invocada por una persona que da muerte a otra, el Código Penal, en su Art. 22, *supra*, dispone, en lo pertinente:

> Para justificar el dar muerte a un ser humano, cuando se alegue legítima defensa, es necesario tener motivos fundados para creer que al dar muerte al agresor se hallaba el agredido o la persona defendida en inminente o inmediato peligro de muerte o de grave daño corporal. 33 L.P.R.A. sec. 3095.

Sobre este extremo hemos afirmado que "[e]l que mata,

sin embargo, debe haber empleado todos los medios a su alcance, consistentes con su propia seguridad, *para evitar que se le ocasionen daños o tener que privar de la vida a otra persona al defenderse*". (Énfasis suplido.) *Pueblo v. De Jesús Santana*, supra, págs. 797–798. Véase, también, *Pueblo v. Román Marrero*, 96 D.P.R. 796, 802 (1968).

Al examinar los criterios antes esbozados, resulta forzoso concluir que la actuación de Reyes Salcedo no lo hace acreedor a invocar con éxito la legítima defensa propia. Veamos.

No albergamos duda de que Reyes Salcedo, al ser tocado por la espalda y escuchar que "no se moviera, que era un robo", razonablemente podía creer que estaba ante la inminencia de un daño. En este caso, sensatamente también podía creer que estaba ante la inminencia de un robo. Sin embargo, ¿estaba Reyes Salcedo ante una razonable creencia de que se encontraba ante la inminencia de *la muerte?* Estimamos que no.

Reyes Salcedo no expresa que sintiera un arma de fuego en su espalda. Tan sólo sintió que lo tocaron. Al mirar por debajo de su brazo izquierdo observó que la persona que estaba tras de sí portaba un arma de fuego *en la cintura.* Así, pues, ¿fue el medio empleado para repeler esta agresión razonable? Ante estos hechos, ¿hacer tres (3) disparos con su arma de reglamento está jurídicamente justificado?

Es preciso destacar que al evaluar si nos encontramos ante un caso de legítima defensa, hay que considerar que "cuando se habla de necesidad racional y de creencia razonable no es la de cualquier persona, sino la del hombre/mujer prudente y razonable". Nevares-Muñiz, *Derecho penal puertorriqueño: parte general, op. cit.*, pág. 193. Esta evaluación se da en función de esa figura mítica que actúa conforme a las normas de la razonabilidad y la prudencia, a la luz, no sólo de las circunstancias específicas en las que su conducta es desplegada, sino, además, de acuerdo con los conocimientos y las destrezas que se le pueden atribuir

a esa persona. De este modo, en el caso de autos el criterio que debemos invocar para evaluar la razonabilidad de la actuación de Reyes Salcedo es la figura del policía prudente y razonable.

Ante lo anterior, ¿el policía prudente y razonable hubiera creído que tres (3) disparos seguidos configuraban el grado de fuerza adecuado para repeler a un asaltante de forma tal que se configura la legítima defensa? Al abordar el grado de proporcionalidad entre la amenaza y el daño infligido, la opinión del Tribunal responde esta interrogante de la forma siguiente:

> Se podría argumentar que un solo disparo bastaba para repeler al agresor. No obstante, esto ignoraría que el recurrente, sin voltearse, siguiendo así las instrucciones del agresor en cuanto a no moverse, dispara por debajo de su brazo izquierdo. La posición incómoda en que se efectúan los disparos y el hecho de no saber exactamente la posición del agresor nos permiten inferir que, al tratarse de un acto rápido e inesperado, actuó siguiendo sus mejores reflejos. Obsérvese que tan pronto el recurrente se voltea y ve a quien le había disparado no continúa haciéndolo. Opinión del Tribunal, págs. 101–102.

Como puede apreciarse, esta aclaración omite el hecho de que Reyes Salcedo vio que el alegado agresor portaba su arma de fuego en la cintura. Según el texto transcrito, Reyes Salcedo hace los tres (3) disparos seguidos, sin mirar tras sí, sin saber la posición exacta del agresor, como un mero reflejo. Estas expresiones parecen describir más actuaciones negligentes de una persona que una actuación compatible con el grado de cuidado que se debe exigir a un miembro de la Policía de Puerto Rico, persona entrenada para manejar armas de fuego y situaciones de peligrosidad. El uso de la fuerza mortal, en estas circunstancias, no estaba justificada, más aún cuando Reyes Salcedo no expresa que creía que había sido encañonado. El grado de fuerza desplegado por él para repeler la agresión fue excesiva.

Lo anterior nos mueve a concluir que en el caso de autos

no se satisfacen los requisitos que la jurisprudencia establece para que se configure la legítima defensa. En vista de ello, estimamos que no aplica esta defensa como eximente de responsabilidad por la conducta proscrita en la falta grave 2 del Reglamento de Personal de la Policía de Puerto Rico, *supra*.

## IV

Por otro lado, la opinión del Tribunal concluye que ya que Reyes Salcedo actuó en legítima defensa, su actuación no podía calificarse como negligente o que fuera constitutiva de incapacidad manifiesta, ineptitud o descuido, según lo castiga la falta grave 1 del Reglamento de Personal de la Policía de Puerto Rico, *supra*. Al respecto, citando como fundamento a Santos Briz, la opinión del Tribunal aduce que "la legítima defensa propia es una causa excluyente de negligencia cuando así lo autoriza alguna disposición legal". Opinión del Tribunal, pág. 105.

Debemos advertir que la obra y página citada tan sólo trata de la legítima defensa como excluyente de la antijuridicidad *en el contexto de la responsabilidad civil*. J. Santos Briz, *La responsabilidad civil: derecho sustantivo y derecho procesal*, 5ta ed., Madrid, Ed. Montecorvo, 1989, pág. 35. Esas expresiones no se dan en el contexto de un procedimiento *disciplinario administrativo* como el caso que tenemos ante nuestra consideración.

De igual forma, la opinión emitida por este Tribunal expresamente señala que tal exclusión de la negligencia en casos de legítima defensa ocurrirá en aquellas instancias en las que alguna disposición legal lo autorice. La mayoría no nos expresa qué disposición de ley autoriza tal exclusión de negligencia en procesos disciplinarios administrativos. De hecho, la actual redacción de las conductas tipificadas como faltas del Reglamento de Personal de la Policía sugiere que un miembro de ese Cuerpo puede actuar en legí-

tima defensa y aún así actuar con negligencia, ya que en la falta grave 1 no se excluyen expresamente las instancias en las que se configura la legítima defensa. Se trata de faltas independientes en las que la legítima defensa sólo es excluyente de responsabilidad en una de ellas.

Por otro lado, aunque de ordinario la determinación de qué constituye una actuación negligente es una determinación revisable por el foro judicial como cuestión de derecho, lo cierto es que de un análisis integral de lo descrito como falta grave 1 en el Reglamento de Personal de la Policía, *supra*, se desprende que la conducta proscrita se da en función de los "deberes, funciones y responsabilidades" de un miembro de la Policía. En este extremo, somos de la opinión que la determinación que al respecto realiza el Superintendente de la Policía y la C.I.P.A. se da dentro del ámbito de especialidad de esa agencia. Su determinación en cuanto a la conducta que debe desplegar un miembro de ese Cuerpo merece por los tribunales considerable deferencia, y en ese sentido no debe ser alterada a menos que sea irrazonable o arbitraria.

Nuestro análisis de las disposiciones estatutarias y reglamentarias pertinentes nos convence de que la determinación de esa entidad, en términos de que Reyes Salcedo cometió la falta grave 1 de su Reglamento, *supra*, no resulta irrazonable. Reyes Salcedo disparó su arma de reglamento tres (3) veces de forma seguida, sin saber la posición exacta de su agresor, consciente de que el arma de éste estaba en su cintura, en un centro comercial, sin tratar siquiera de manejar la situación de una forma que resultara menos peligrosa para él o para las personas que estaban en las cercanías. La conclusión de que esta actuación infringe la conducta tipificada como falta grave 1 es enteramente razonable, por lo que ella no debe ser alterada.

Alterar ese juicio sería contradictorio con nuestros pronunciamientos previos en los que le hemos exigido a los funcionarios superiores que ejerzan la debida supervisión

de sus subalternos para evitar actuaciones de éstos inconsecuentes con la ley. En específico, sería contradictorio con nuestra continua exigencia al Superintendente de la Policía para que tome las medidas correctivas apropiadas para evitar la ocurrencia de actos u omisiones culposas o negligentes que atenten contra la propiedad y vida humana por parte de los miembros de la Policía. *Leyva et al. v. Aristud et al.*, 132 D.P.R. 489 (1993). Véanse, además: *Negrón v. Orozco Rivera*, 113 D.P.R. 712 (1983); *Galarza v. E.L.A.*, 109 D.P.R. 179 (1979); *Alberio Quiñones v. E.L.A.*, 90 D.P.R. 812 (1964).

Por último, en cuanto a la sanción impuesta por el Superintendente de la Policía y confirmada por la C.I.P.A., debemos destacar que ésta es otra área ubicada dentro del ámbito de especialidad de dicha agencia. Constituye un juicio sobre qué sanciones son las más adecuadas de acuerdo con la conducta proscrita. La determinación tomada en el caso de autos tampoco resulta irrazonable y, conforme a las normas que rigen nuestra función revisora, merece deferencia por este Foro. La responsabilidad vicaria que se cierne sobre este tipo de funcionario exige de los tribunales brindarle deferencia cuando toma medidas disciplinarias contra sus subalternos, según lo autoriza las disposiciones de ley y reglamentarias pertinentes, como es el caso de autos.

Por las razones que anteceden, disentimos en cuanto a que Reyes Salcedo actuó en legítima defensa y a que, por lo tanto, no incurrió en la conducta descrita en las faltas graves 1 y 2 del Reglamento de Personal de la Policía de Puerto Rico, *supra*. En vista de ello, confirmaríamos la resolución recurrida.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

En el caso de autos es menester tener claramente en cuenta cuál es el asunto en realidad ante nos. La cuestión que nos toca resolver *no es* si el apelante *cometió un delito*, más allá de toda duda razonable. Si esa fuera la cuestión, estaría conforme con la posición que la mayoría de este Tribunal sostiene en su opinión.

El asunto que nos toca resolver realmente es otro. Es el de determinar si el Superintendente de la Policía y la C.I.P.A. se equivocaron al decidir que el apelante no debía seguir siendo miembro del Cuerpo de la Policía de Puerto Rico. A ello, en esencia, se reduce la cuestión ante nos.

Aquí, los que mejor conocen estos asuntos, el Superintendente y la C.I.P.A., han juzgado que el apelante usó indebidamente su arma de fuego y así le dio muerte a otro policía. Por ello estimaron que el apelante no debía continuar en el Cuerpo. Tal conclusión, en mi criterio, no es tan irrazonable y arbitraria que justifique nuestra intervención para revocarla. *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692 (1975).

La mayoría, en su opinión, descansa en su apreciación de que el apelante actuó en defensa propia. Tal apreciación, sin embargo, no fue compartida por quienes mejor conocen cuál es la conducta que razonablemente se espera *de un policía* que se encuentre en una situación como la que estuvo el apelante. Yo tampoco la comparto. El apelante, en mi criterio, actuó intempestivamente al dispararle a otra persona, sólo porque ésta portaba un arma de fuego *en la cintura*. Un agente del orden público, precisamente por la naturaleza misma de su cargo, debe ser particularmente cuidadoso en cuanto a cómo hace uso de la ominosa facultad que tiene de utilizar armas mortales. No

puede recurrir a ellas por cualquier provocación o susto; no puede ser *trigger-happy*. De otro modo, la licencia que le da el Estado para hacer uso de armas mortales, para la protección de las personas, se convierte en una inaceptable amenaza y un riesgo público.

Aquí el policía que tocó por la espalda al apelante y en broma le dijo que se trataba de un asalto, *no lo estaba encañonando*. Su arma la llevaba en la cintura, y el apelante lo sabía. En tales circunstancias, no es irrazonable la decisión del Superintendente y de la C.I.P.A. de que el apelante no estaba justificado para disparar tan súbitamente y a quemarropa, como lo hizo, sin cerciorarse de modo alguno de cuáles eran las intenciones de la otra persona con respecto al arma que portaba, no en sus manos, sino en la cintura. No es irrazonable su determinación de que una persona que actúa de tal modo no debe continuar siendo policía.

Francamente no entiendo cómo la mayoría puede pensar que tales determinaciones del Superintendente y de C.I.P.A. fueron arbitrarias e ilegales. Por ello, disiento.